## Commonwealth v. Watts

*William E. Nugent,* for Commonwealth.
*Daniel M. Preminger,* for defendant.

RIBNER, *J.*, September 8, 1980—On February 1, 1980 the Pennsylvania Supreme Court reversed defendant's conviction on first degree murder and conspiracy charges and granted him a new trial: Com. v. Watts, 488 Pa. 214, 412 A. 2d 474 (1980). In its opinion in support of reversal, the Supreme Court held that defendant's trial attorney was ineffective in not objecting to the prosecutor's misconduct manifested in his closing jury argument. Following the remand to the court of common pleas, defendant filed the instant motion to dismiss based on his assertion that reprosecution would violate his right not to be placed in double jeopardy.

The narrow test at this stage is one which was specifically set forth in Com. v. Potter, 478 Pa. 251, 267, 386 A. 2d 918 (1978). In Potter, it was held that a retrial would be barred "when the prosecuting

lawyer, judged by an objective standard, must be deemed to have been substantially certain that a mistrial would be declared as a result of his questions to witnesses or other conduct at trial." In Com. v. Slaughter, 268 Pa. Superior Ct. 553, 408 A. 2d 1141 (1979), the court noted that even in situations as in Slaughter where the assistant district attorney's conduct was "tasteless" and worthy of condemnation, the record did not warrant a finding that the prosecutor intended to cause the trial to be aborted. Again, in the recent case of Com. v. Mitchell, 488 Pa. 75, 78, 79, 410 A. 2d 1232 (1980), the Supreme Court once more noted:

"The only exception to the rule permitting retrial is where a defendant's mistrial request is necessitated by prosecutorial error committed intentionally to force the accused to move for mistrial, thereby affording the prosecution another, possibly more favorable, opportunity to convict. . . . When such governmental overreaching or bad faith is found to exist, the double jeopardy clause will bar retrial."

On June 5, 1980 an evidentiary hearing was held to find the facts necessary to determine whether the trial prosecutor's misconduct should preclude another trial. The misconduct determined to be present instantly by the Supreme Court involved remarks by the assistant district attorney which the court viewed as the kind likely to incite or inflame the jury. Specifically, the assistant district attorney made the following remarks during his closing speech:

"The first officer says, 'I see blood all over the back of the car; I see blood all over the front of the car.' *I want blood all over the courtroom. I want to*

*upset you about this case.* This is nothing but assassination . . . I don't want to inflame members of the jury. I put it in evidence to corroborate Elliot Burton." (Emphasis supplied.)

The Supreme Court found these remarks so venal that it not only resulted in the aforementioned reversal but prompted two Justices to declare that the "comments in closing are so outrageous that he (the assistant district attorney) deprived the defendant of a fair trial. The assistant district attorney's employer should consider firing him."

The evidentiary hearing helped elucidate the true facts of this case. At the hearing, the Commonwealth, in support of its argument that a retrial should not be barred, presented the testimony of Judge Richard Klein, the trial judge who presided at the original trial, as well as Mr. DeSimone, the trial prosecutor, and Mr. Marino, the trial defense lawyer. While all three men assumed sharply different roles at trial, all three agreed at the instant evidentiary hearing that the trial transcript before the Supreme Court made possible a completely mistaken impression of the true nature, style, and import of the assistant district attorney's speech. Judge Klein noted that the case was tried by "two good lawyers who gave two excellent summations in the case." (Hearing of June 5, 1980, N.T. 5.) Judge Klein further noted that the complained of comment was totally innocuous and that the transcript merely suffered from imperfect punctuation by the court reporter. Judge Klein recalled that the assistant district attorney's comment was rhetorical in nature and that the remark in question was in response to defense counsel's statements that the prosecutor desired to put a specter of blood before the jury through police testimony in order to upset

the jury and interfere with its objectivity and otherwise bolster a weak case. Defense counsel, Mr. Marino, corroborated this characterization by the judge of the prosecutor's speech. In particular, Mr. Marino stated the following: "But the statements as they appear in the record are not the way they were made in the courtroom. The statements made by Mr. DeSimone—they were questions, rather than statements. In other words, he said, 'I want blood all over the courtroom?' You know, a question." (N.T. p. 23, evidentiary hearing, June 5, 1980.) (Emphasis supplied.)*

Based on all of the evidence elicited at the evidentiary hearing as well as a full reading of the summations in question, it is clear to this court that the assistant district attorney did not intend to cause the trial to be aborted. Furthermore, it is also quite clear that the transcript before the Supreme Court whch led to the reversal was flawed. Had the record been properly corrected to reflect the actual style, meaning and context of the prosecutor's remarks, the Supreme Court, in this writer's view, would have found no error in the trial defense counsel's failure to object to these remarks by Mr. DeSimone.

Such a regrettable result arising from a simple mistake can be avoided in the future only if a trial record is thoroughly reviewed by the parties before filing that record on appeal. However, when new defense counsel replaces trial counsel either on direct appeal or in a collaterial attack proceeding and the failure of trial counsel to object does not lead

---

*The writer of this opinion should note at this juncture that every witness stated that Mr. DeSimone emphasized the word "I", and he was asking a rhetorical question. The record did not, of course, reflect the inflection and questioning tenor of the statement being here considered. Viewed in this light, and in this context, it is apparent that the prosecutor's remarks were not prejudicial nor were they inflammatory.

conclusively to a waiver of the issue, additional problems arise, as in the present case. Because prosecutorial misconduct in district attorney's speeches has become such a fertile area for appellate review with attendant counteraccusations by the prosecutor that the defense invited the response in the latter's summation, it might perhaps be appropriate to now consider new methods which will enable the appellate courts to reconstruct closing arguments. Tape recorded closing aguments in serious cases might be burdensome and expensive, but much less so than the effort and cost of needless retrial. Clearly, otherwise objectionable remarks by a trial prosecutor delivered in a bland and emotionless manner rather than a bombastic and passionate one could be the difference between prejudicial and harmless error.

Certainly, the availability of a tape recording enabling a play back of this simple complained of passage in Mr. DeSimone's closing speech during this lengthy and serious homicide trial would have perhaps done much to achieve permanent justice by leading to the affirmance of the judgmental wisdom of the first tribunal.

Accordingly, defendant's motion for dismissal based on double jeopardy grounds is hereby denied.