412 A.2d 474
**COMMONWEALTH of Pennsylvania**
v.
**James A. WATTS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1979.

Decided Feb. 1, 1980.

Reargument Denied April 3, 1980.

Daniel M. Preminger, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, James Watts, was convicted in the Court of Common Pleas of Philadelphia of murder of the first degree

and criminal conspiracy. He was sentenced to imprisonment for life for murder and five to ten years for conspiracy, the sentences to run concurrently. He appealed the judgment of sentence for murder to this court and appealed the judgment of sentence for conspiracy to the Superior Court, which certified that appeal to this court.

Appellant was charged in connection with the shooting death of Andre Washington, whose body was discovered in the front seat of a car on Vertel Road in Philadelphia at 1:35 a. m., on September 24, 1974.

Elliot Burton, a prosecution witness, testified as follows: Decedent, for several weeks prior to his death, had been trying to be admitted to the Twentieth and Carpenter Street Gang, of which Burton and appellant were members. Donald Robinson, the leader of the gang, suspected decedent was a spy for a rival gang. During the evening of September 23, 1974, Robinson arranged for appellant and gang members Albie Sims and Jeffry Johnson to kill decedent. The three were to take decedent out on the pretext they were initiating him into the gang. They were to go in two cars, one of which belonged to Robinson and one of which had been stolen. Decedent was to ride in the stolen car and was to be shot and left in it. The others were to return in Robinson's car. Robinson was to pay each perpetrator $100 and a quarter of a pound of marijuana. Shortly after midnight, they left as planned, and later returned to report to Robinson that Washington had been killed. They said they had shot him while he was in the back seat of the car and again while he was in the front seat, and had left his body in the front of the car. Burton claimed he was present during the discussion, but did not take any part in the shooting.

In defense, appellant attempted to impeach Burton's credibility by calling Fulton Jones, appellant's stepbrother, to testify. Jones testified Burton had accused appellant of going with his, Burton's, girlfriend, and that appellant and Burton had been in a fight. According to Jones, Burton told appellant he would get even with him.

■ Appellant alleges he was denied effective assistance of counsel and is thus entitled to a new trial, citing numerous instances of ineffectiveness. However, because of our resolution of one of appellant's allegations of error, we need reach only one issue.* Appellant claims counsel was ineffective for failing to object to one portion of the prosecutor's closing argument. As we stated in *Com. ex rel. Washington v. Maroney*, 427 Pa. 599, 604–05, 235 A.2d 349, 352–53 (1967):

" . . . We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." (Footnote omitted.) (Emphasis in original.)

Thus, if any reasonable basis existed for trial counsel's failure to object, appellant would not be entitled to a new trial. However, if there was no reasonable basis for the failure to object, appellant would have been denied his right

* Appellant's other allegations of error, as set forth in his brief, are:
"1. Did not the trial Court err when instructing the jury on the issues of accomplice, corrupt source, and credibility.
"2. Did not trial counsel render ineffective assistance by:
"A. Failing to object to the trial Court's instruction on accomplice and corrupt source and also in failing to request a charge on the effect of a prior criminal record on credibility.
"B. In not objecting to the cross examination of the only defense witness on his non crimin falsi prior convictions.
* * * * * *
"D. Failing to interview potential alibi and material witnesses, and by failing to subpoena documentary evidence that would have demonstrated that the Commonwealth witness had lied.
"E. Failing to request a jury charge on Involuntary Manslaughter.
"F. Failing to object to hearsay evidence on the identification of the body of the deceased, and thereby not requiring the Commonwealth to prove the identity beyond a reasonable doubt.

to effective assistance of counsel and thus would be entitled to a new trial.

As previously mentioned, Elliot Burton had testified the killers informed the gang members that the victim had been shot in both the front and back seats of the car. To bolster Burton's credibility, the Commonwealth called a police officer, who inspected the vehicle, and who testified that blood stains were present in both the front and back seats. Defense counsel, in his closing remarks, commented:

> "Officer Cook [the officer in question] was put on the stand by [the assistant district attorney] just to establish an officer at the scene and what he saw. The District Attorney does that for another reason, too. By his question about what was the interior of the car like—you heard the answer—he wants to show you it was a bloody scene. Well, you know, sure it was a bloody scene. A young man was killed. There is no question about that. It is a terrible situation."

In response, the prosecutor stated during his closing remarks:

> "The first officer says, 'I see blood all over the back of the car; I see blood all over the front of the car.' *I want blood all over the courtroom. I want to upset you about this case.* This is nothing but assassination. . . . I don't want to inflame members of the jury. I put it in evidence to corroborate Elliot Burton." (Emphasis added.)

Appellant argues his trial counsel's failure to object to the emphasized portion of the prosecutor's closing amounted to ineffective assistance of counsel. We agree and accordingly grant him a new trial.

The American Bar Association Standards Relating to the Prosecution Function, § 5.8(c) state:

> "The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury."

In discussing possible prosecutorial misconduct during closing arguments, we have held that this court will follow

the A.B.A. Standards. *Commonwealth v. Cherry*, 474 Pa. 295, 378 A.2d 800 (1977). As we held in *Cherry*, it is impermissible for a prosecutor to appeal to the emotions of jurors so as to divert their inquiry away from weighing the evidence presented. The prosecutor, by stating, "I want blood all over the courtroom," did precisely what we condemned in *Cherry*. Further, when stating in his closing remarks, "I want to upset you about this case," the prosecutor admitted prosecutorial misconduct. We further believe the prosecutor's statement that "I don't want to inflame members of the jury" was ineffective as a possible attempt to mitigate the obvious harm done by his prior statements.

The Commonwealth argues the prosecutor's closing remarks were a legitimate response to defense counsel's arguments during his closing. While defense counsel did state the prosecutor wanted the jury to know it was a bloody scene, that in no way permits the prosecutor to resort to unprofessional conduct during his own closing argument.

As we believe a mistrial should have been granted, had defense counsel so moved, we perceive no reasonable basis for failing to object and move for a mistrial. We therefore find that appellant was denied effective assistance of counsel and is entitled to a new trial.

Judgments of sentence reversed and new trial granted.

LARSEN, J., joins in the Opinion of the Court and files a separate concurring opinion in which FLAHERTY, J., joins.

NIX, J., files a dissenting opinion.

MANDERINO, J., did not participate in the decision of this case.

LARSON, Justice, concurring.

I join in the majority opinion.

This is an example of poor work on the part of an assistant district attorney. His comments in closing are so outrageous that he deprived the defendant of a fair trial.

The assistant district attorney's employer should consider firing him.

FLAHERTY, J., joins in this concurring opinion.

NIX, Justice, dissenting.

In recent years, the majority has become increasingly more unrealistic in its determination of what is improper argument during the prosecution's summation in a criminal trial. I am fully in accord with the fundamental principle that unwarranted attempts to inspire prejudice and passion should not be permitted. However, every good rule can be made to appear ridiculous when its application goes beyond the purpose for which the rule was fashioned. In this trial which lasted several days, the majority has seized upon one sentence, uttered by the prosecution in the waning moments of the trial to justify overturning an otherwise unblemished proceeding. Such a result is not only indefensible, but patently absurd.

The remark in question was, "I want blood all over the court room. I want to upset you about this case." The obvious import of these two sentences was to impress upon the jury the seriousness of the matter that was before them, nothing more and nothing less. While the reference to blood may have been overly dramatic, it did not reach that degree of offensiveness or engender such passion as would justify a conclusion that the defendant was deprived of a fair trial.

Again, I remind the majority of the well-settled doctrine that we are not required to give a defendant a perfect trial. Our responsibility is to see that he is accorded a fair trial, and in my judgment, that responsibility has been met in this case. *Commonwealth v. Martinolich*, 456 Pa. 136, 162, 318 A.2d 680 (1974); *Commonwealth v. Hill*, 450 Pa. 477, 480–81, 301 A.2d 587, 590 (1973); *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

I am therefore of the view that the judgment should be affirmed.