464 A.2d 1226

**COMMONWEALTH of Pennsylvania**

**v.**

**Robert TODT, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1982.

Filed July 15, 1983.

Reargument Denied Sept. 19, 1983.

Petition for Allowance of Appeal Denied Feb. 8, 1984.

58

Michael Alan Klimpl, Doylestown, for appellant.

Stephen B. Harris, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before SPAETH, WICKERSHAM and CIRILLO, JJ.

WICKERSHAM, Judge:

This appeal arises out of Robert Todt's challenge to his conviction of attempted homicide; criminal conspiracy and criminal solicitation. Todt alleges that he was denied a fair trial because of errors relating to the admission of evidence, prosecutorial misconduct and ineffective assistance of counsel; he also complains that his sentence is illegal.

Robert Todt was arrested on July 25, 1980 and charged with offenses involving the shooting of his wife, Loretta Todt. Todt applied for a change of venue because of pre-trial publicity which application was denied by a judge of the Bucks County Court of Common Pleas.

The case came to trial before the Honorable Edmund V. Ludwig and a jury and after a lengthy trial, Robert Todt was found guilty of attempted homicide, criminal conspiracy and criminal solicitation. Post-trial motions were presented to the court below; the lower court, sitting en banc, denied these motions. On April 23, 1981, Judge Ludwig sentenced Todt to a five to ten year prison term on the attempted homicide conviction. Todt received another five to ten year sentence on the criminal conspiracy and criminal solicitation convictions to be served consecutively to the conviction for attempted homicide. This appeal timely followed.

Robert Todt was a board certified special education teacher employed as a high school teacher by the Bensalem Township School District. Todt lived in Levittown, Pennsylvania with his wife Loretta and their two children. In the late evening of March 19, 1980, while Robert Todt was out of the house, an individual entered the Todt residence and shot Loretta Todt. Although the bullet fired destroyed her left eye and remains lodged in her skull, Loretta Todt survived the attack.

At trial, the Commonwealth's most important witness was John Chairmonte. Chairmonte, a former student in Bensalem High School's program for students with learning disabilities, was an alcohol and drug abuser with a criminal record. His involvement with the attack upon Loretta Todt was revealed after his arrest on an unrelated charge. John Chairmonte admitted that he shot Loretta Todt at Robert Todt's behest. In exchange for testimony against Todt, Chairmonte was promised that his sentence for shooting Loretta Todt would not exceed five years to be served in the Bucks County Prison.

Chairmonte testified that in March of 1980 Robert Todt offered him $800 to kill a woman Todt described as a babysitter. Todt gave Chairmonte a .32 caliber pistol and some bullets. Three days before the shooting Todt went to Chairmonte's home, woke him up and brought him to Todt's home. Todt and Chairmonte then drove to Frankford Hospital, where Loretta Todt worked. As explained by Chairmonte, the plan was for him to surprise Loretta Todt as she entered her car after work, take her to a back road and shoot her. Chairmonte was, however, too frightened to carry out this scheme.

A new scheme was developed, and Todt gave Chairmonte a key to Todt's house. On March 19, 1980, Chairmonte entered the Todt house through the garage, shot Loretta Todt and rifled several drawers to make it look as though a burglary had taken place.

The Commonwealth offered evidence to explain Todt's motive for wishing to have his wife killed. One witness,

Colleen Fecho, testified that she had been engaged to Robert Todt and had made substantial plans toward marriage, which was to take place on April 19, 1980. Ms. Fecho further stated that Robert Todt spent the evening of the shooting, March 19, 1980, with her and that he did not leave until about 11:35 or 11:40 p.m. Another witness, Judy Worthington, testified that she was also involved with Todt.

When the Commonwealth rested its case, Todt took the stand in his own behalf. Todt admitted that he was carrying on an extramarital affair and that his fiancee, Ms. Fecho, made wedding plans. Todt said that he lied to his wife to cover up the affair with Ms. Fecho and lied to Ms. Fecho about marriage, for actually, he had no intention of marrying Ms. Fecho.

Todt denied hiring John Chairmonte to kill his wife Loretta. Todt admitted that he had gone to Chairmonte's home and brought Chairmonte to his own house but insisted that he only helped Chairmonte fill out an application for a job. Character witnesses called for Todt's defense said that he often helped students to find work. After explaining his contact with John Chairmonte, Todt testified that he spent the evening of the shooting with Colleen Fecho at her house, and that when he got home at 11:45 p.m. he found neighbors attending his injured wife.

■ Robert Todt's first appellate issue questions the sufficiency of the Commonwealth's evidence. Todt argues that because Chairmonte had given different versions of the shooting of Loretta Todt and because the testimony of Chairmonte, an accomplice, came from a corrupt source, there was insufficient evidence to support Todt's conviction.

Initially, we note the standard of review to be employed in assessing claims of insufficient evidence:

It is well settled that in passing upon a claim of insufficiency we must view the evidence in the light most favorable to the verdict winner. The evidence is sufficient if, accepting as true all the evidence and all reasonable inferences therefrom upon which, if believed, the jury

could have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that appellant is guilty of the crimes for which he was convicted.

*Commonwealth v. Dreibelbis,* 493 Pa. 466, 469, 426 A.2d 1111, 1112 (1981).

After a thorough review of the voluminous trial record we believe that the Commonwealth's evidence, if accepted by the jury, was sufficient to prove Todt's guilt.

 Robert Todt argues that John Chairmonte's testimony was so unreliable and contradictory that it led to a jury verdict based on conjecture and suggests that the case of *Commonwealth v. Bennett,* 224 Pa.Super. 238, 303 A.2d 220 (1970) is controlling. In *Bennett, supra,* this court reversed a conviction when the Commonwealth's witness, one Jones

sought to implicate the defendant by giving several wholly different, conflicting and inconsistent versions of when and how he had told her that the car had been in fact stolen by him. On a previous occasion Jones had denied he had ever conveyed to defendant knowledge of the car's theft. With each new version Jones would recant the previous one and protest that the newest version was in fact the true one. This situation presented the jury not with a mere conflict or contradiction in testimony which was reasonably reconcilable by them, but a situation falling within the rule: "... a case should not go to the jury where the party having the burden offers testimony of a witness, or of various witnesses, which is so contradictory on the essential issues that any finding by the jury would be a mere guess ... *when the testimony is so contradictory on the basic issues as to make any verdict based thereon pure conjecture the jury should not be permitted to consider it.*"

*Id.,* 224 Pa.Superior Ct. at 239–40, 303 A.2d at 220–21 (citation omitted).

Here, John Chairmonte's testimony was not so contradictory on the basic issues as to make the guilty verdict

against Todt a matter of pure conjecture even though Chairmonte had given different versions of what happened the night of the shooting. When first questioned by the police Chairmonte denied knowledge of the crime. N.T. 12/3/80 at 74–75. Later, Chairmonte told the police that Robert Todt shot his wife while Chairmonte ransacked the first floor of the house. Chairmonte explained that he lied because he did not want to take the "whole rap" for the crime. N.T. 12/3/80 at 77. Finally, Chairmonte told the police that he shot Loretta Todt at Robert Todt's behest. This last statement Chairmonte gave to the police was consistent with his testimony at trial, which was given in exchange for a relatively light sentence.

Although these accounts of the shooting were unquestionably different:

> "A mere variance in testimony, or the fact that a witness may have made contradictory statements, goes to the question of the credibility of the witness but does not, in itself, indicate perjury on the part of the witness, or that the defendant was convicted on perjured testimony, and is not, of itself, sufficient to compel a new trial. \* \* \* "
> However, where the testimony is so contradictory and fantastic to be incredible, the Court has a right to grant a new trial. *Commonwealth ex rel. Rook v. Myers*, 402 Pa. 202, 167 A.2d 274, 276 (1961).

*Commonwealth v. Osborne*, 433 Pa. 297, 301, 249 A.2d 330, 332 (1969). See also *Commonwealth v. Whack*, 482 Pa. 137, 393 A.2d 417 (1978); *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Williams*, 290 Pa.Super. 209, 214, 434 A.2d 717, 719 (1981). As the Pennsylvania Supreme Court explained in *Commonwealth v. Upsher*, 497 Pa. 621, 625, 444 A.2d 90, 92 (1982):

> In *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976), this Court held that "where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding." However, this rule applies only in those

cases where the testimony is so patently unreliable that a verdict of guilt would be based upon pure conjecture. *Commonwealth v. Whack,* 482 Pa. 137, 393 A.2d 417 (1978). In *Commonwealth v. Hudson,* 489 Pa. 620, 414 A.2d 1381 (1980), this Court held that contradictions by other witnesses and *prior inconsistent statements* affect the credibility of the witness and do not render his testimony patently unreliable under the *Farquharson* standard. Issues of credibility are properly left to the jury for determination. *Commonwealth v. Hudson, supra.*

(Emphasis added).

Our review of Chairmonte's testimony convinces us that his testimony was not so unreliable or contradictory as to render the jury verdict against Todt a matter of pure conjecture.

 Robert Todt also attacks Chairmonte's testimony on the ground that the evidence given by an accomplice comes from a corrupt source. Where parties in crime testify against each other, their testimony must be recognized as coming from a corrupt source and therefore must be subject to the closest scrutiny. *Commonwealth v. Hudson,* 489 Pa. 620, 414 A.2d 1381 (1980); *Commonwealth v. Farquharson, supra.* Nevertheless, guilt or innocence may be predicated on uncorroborated testimony of an accomplice. *Commonwealth v. Goldblum,* 498 Pa. 455, 466–67, 447 A.2d 234, 240 (1982); *Commonwealth v. Hudson, supra,* 489 Pa. at 628, 414 A.2d at 1385; *Commonwealth v. Cayton,* 300 Pa.Super. 417, 419–20, 446 A.2d 924, 925 (1982). In this case, John Chairmonte's testimony was not altogether uncorroborated and once on the stand he consistently implicated Robert Todt in the shooting despite vigorous cross-examination. The jury was certainly aware that Chairmonte actually shot Loretta Todt and that Chairmonte received a light sentence in exchange for his testimony against Robert Todt. The obvious credibility questions

raised by the testimony of an accomplice were resolved by the jury against Todt.

■ Todt's second issue is:

Did the unrelenting presentation of inflammatory prejudicial and irrelevant evidence deprive defendant of a fair trial?

Brief for Appellant at 2.

Todt argues that because of John Chairmonte's substantial credibility defects, the Commonwealth introduced inflammatory prejudicial evidence to secure a conviction. The allegedly inflammatory evidence consisted of an excessive amount of evidence about Robert Todt's relationship with his paramour before the shooting, evidence about Robert Todt's relationship with another woman after the shooting and evidence that Robert Todt hinted that he was connected to organized crime.

In response to Todt's attack on the admissibility of evidence about his extramarital affairs, the Commonwealth argues that the evidence was relevant as an explanation of Todt's motive. The prosecution's theory was that Todt wanted his wife killed because one of his extramarital affairs had led to plans for marriage. The evidence as to Todt's so-called connections to organized crime was introduced to explain why John Chairmonte agreed to shoot Loretta Todt in the first place and then why he did not collect his payment for doing the job.

Todt agrees that evidence is admissible if it is relevant but argues that even if the Commonwealth's evidence was relevant the prejudicial impact of the evidence outweighed its probative value. In determining whether the lower court erred in allowing the testimony complained of we

begin with the general rule that the admission and exclusion of evidence is a matter within the discretion of the trial judge.... That discretion, however, may be abused, and abuse may be found if it appears that the judge admitted irrelevant evidence that was prejudicial to the

accused ... or evidence the probative value of which was outweighed by its prejudicial impact....

Evidence is relevant if it tends to make more or less probable the existence of some fact material to the case.... ("Relevant evidence then, is evidence that in some degree advances the inquiry, and thus has probative value, and is prima facie admissible").

*Commonwealth v. Krajci*, 283 Pa.Super. 488, 495, 424 A.2d 914, 917–18 (1981).

The evidence adduced at Todt's trial did advance the inquiry. There was extensive testimony about Todt's engagement to Colleen Fecho (who believed Todt to have been divorced) and the preparations for their marriage which testimony demonstrated a lack of affection for Loretta Todt. It also showed that Todt was not merely carrying on a casual flirtation but rather was in a desperate position, having made public his intention to contract a bigamous marriage. The evidence about Todt's boasts of connections with organized crime helped explain why John Chairmonte became involved in Todt's scheme. The probative value of evidence as to Todt's motives and Chairmonte's motives for carrying out Todt's plan outweighed any possible prejudice to Todt.

■ Todt's third issue is:

Did the misconduct of the prosecutor deprive defendant of a fair trial?

Brief for Appellant at 2.

Robert Todt argues that he was deprived of a fair trial by prosecutorial misconduct during the trial and during the prosecutor's closing argument. Todt points out that it is unprofessional conduct for a prosecutor to knowingly, and for the purpose of bringing inadmissible matter to the attention of the jury, ask legally objectionable questions. Todt believes that the assistant district attorney violated this standard during the examination of Judy Worthington.

The Commonwealth's offer of proof as to Ms. Worthington's testimony was that she would say that Robert Todt

took her to a local park and explained that he was going to Virginia. Todt also told Ms. Worthington that he would take her on a trip with his wife's inheritance. After a defense objection was overruled, Ms. Worthington was asked what happened at the park, she replied, "We had talked and after awhile we got intimate." N.T. 12/5/80 at 8. A defense motion for a mistrial was denied and a lengthy sidebar conference was held. A careful examination of the record reveals that the prosecutor was not attempting to bring prejudicial matter before the jury. When the prosecutor asked Ms. Worthington what happened at the park he wanted to show the jury that Todt had plans for his wife's inheritance. The prosecutor's examination after the sidebar conference was designed to get Ms. Worthington to recount what Robert Todt told her. A new trial on this issue is not warranted.

Todt also believes there was prosecutorial misconduct during the assistant district attorney's closing argument to the jury. Specifically, Todt contends that the prosecutor's closing argument impermissibly conveyed to the jury the prosecutor's personal belief as to Todt's credibility and guilt. It is true that at one point the assistant district attorney said: 'This is a man I think you can draw the conclusion ..." N.T. 12/12/80 at 52. Defense counsel's objection to this expression of opinion was quite properly sustained. We do not believe this remark requires reversal of Todt's conviction.

Todt further argues that the prosecutor was allowed to characterize and stigmatize Todt. The prosecutor stated that Todt himself admitted to lying to cover up his extramarital affairs and that Todt was cold, calculating, callous and arrogant. These comments were within the bounds of the evidence presented. Todt admitted to adultery and lying to conceal adultery; the prosecutor was entitled to use these admissions to argue that Todt had a reason to kill his wife and to attack Todt's credibility. This portion of the Commonwealth's closing argument was certainly vigorously

presented but it did not so prejudice the jury as to require a new trial.

Nor is a new trial mandated by the prosecutor's reference to Todt's defense as a "smokescreen." It is important to note that it was defense counsel who said, "The Commonwealth really tried—and I hate to use this kind of language. I really can't think how else to put it—they really blew a lot of smoke at you, character assassination kind of thing. . . ." N.T. 12/12/80 at 37–38. The prosecutor was entitled to refute the argument of the defense and the manner in which he did so did not amount to prosecutorial misconduct. The prosecutor was telling the jury to reject defendant's "smokescreen" argument and his depiction of the Commonwealth's case as "character assassination," and to focus their attention on the question of Todt's guilt or innocence. We see no prejudicial error in this remark. "Prosecuting attorneys must attempt to meet extravagant, emotional and even distorted arguments of defense counsel in a manner consistent with responsibility as a public prosecutor." *Commonwealth v. Middleton*, 269 Pa.Super. 17, 23, 409 A.2d 41, 44 (1979).

Todt also believes that the prosecutor improperly attempted to play on the jury's sympathy for Loretta Todt, the victim of the crime. The prosecutor said, "Loretta Todt is stuck for as long as she lives with a bullet in the back of her brain. And that's sad" and "the criminal justice system, in addition to protecting society has to protect those who can't themselves." N.T. 12/12/80 at 67–68. Todt urges us to find such comments proscribed by the decision of *Commonwealth v. Youngkin*, 285 Pa.Super. 417, 427 A.2d 1356 (1981). In *Youngkin, supra*, we noted that argument is improper when jurors are asked to place themselves in the unfortunate victim's position or otherwise encouraged to divert their attention from the evidence in favor of their own sympathies or fears. *Id.*, 285 Pa.Superior Ct. at 435, 427 A.2d at 1365. Here, the assistant district attorney described Loretta Todt's condition as sad, but this

does not constitute an effort to distract the jurors from the evidence.

■ Robert Todt's fourth issue is:

Was the defendant denied effective assistance of counsel?

Brief for Appellant at 2.

The alleged ineffectiveness of trial counsel consisted of: failure to move for a change of venue or sequestration of the jury; failure to have the Commonwealth's witnesses sequestered; failure to properly lay a foundation for expert witnesses; failure to object to irrelevant evidence; failure to make various objections to hearsay evidence; failure to call character witnesses and other allegations too numerous to catalog further. Faced as we are with a torrent of minutia, we will address only the colorably meritorious contentions of Robert Todt.

Before ruling on the merits of Todt's arguments, we repeat the standard of review used to judge claims of ineffectiveness. In *Commonwealth v. Watts*, 488 Pa. 214, 412 A.2d 474 (1980) the Pennsylvania Supreme Court held:

'We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.' (Footnote omitted.) (Emphasis in original.)

*Id.*, 488 Pa. at 217, 412 A.2d at 475–76, *quoting, Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–05, 235 A.2d 349, 352–53 (1967).

Our review of the record shows that Robert Todt's trial counsel minimized the Commonwealth's case, sharply at-

tacked the testimony of John Chairmonte and established that Robert Todt was candid about his personal life. Given that the events of March 19, 1980 were bizarre and that the Commonwealth's most important witness had substantial credibility defects we cannot say that trial counsel's strategy was without a reasonable basis designed to effectuate Todt's interests.

Todt claims that his trial lawyer was ineffective for failing to request discovery of statements from the Commonwealth's eye-witnesses. Examination of the record reveals that Todt's counsel made both formal and informal discovery requests pursuant to Pa.R.Crim.P. 305. Trial counsel was not ineffective; ultimately, he obtained and used the previous statements of eyewitnesses.

Todt's other significant claim is that his counsel did not call certain character witnesses requested by Todt. Again, a look at the record shows that Todt's allegation does not support a claim of ineffective assistance of counsel. Several character witnesses were called on Todt's behalf. For example, Todt's father testified that his son frequently helped his students. Yet on cross-examination Todt's father denied knowledge of his son's extramarital affairs. Under the circumstances of this case, presenting character witnesses was not without risk. The good character evidence given was counterbalanced by the Commonwealth's ability to describe Robert Todt as a man living a double life, unknown even to his own family and friends. Defense counsel's choice not to call additional character witnesses had a reasonable basis designed to protect Todt.

As to Todt's other contentions of ineffectiveness we agree with the judge below, who wrote: "We have not specifically discussed each of defendant's manifold and minute claims of ineffectiveness. As often stated, defendant is not entitled to and cannot realistically expect to receive a perfect trial but only a fair trial. See, e.g., *Commonwealth v. Reidenbaugh*, 282 Pa.Super. 300, 422 A.2d 1126 (1980)" Slip op. at 30.

■ Todt's fifth issue is:

Did the court commit reversible error in permitting the critical hearsay testimony of Edward DePiso?

Brief for Appellant at 2.

According to Todt, the trial court erred in allowing Edward DePiso to testify that in early March 1980, Chairmonte pointed out Todt to DePiso and said that Todt wanted Chairmonte to kill Todt's wife. At most, this was harmless error. Before Edward DePiso gave the hearsay testimony complained of here, he stated that he saw Chairmonte and Todt drive off and that upon their return Chairmonte possessed a pistol and ammunition that Chairmonte did not have before he left with Todt. Chairmonte testified that appellant hired him to kill Mrs. Todt and despite some inconsistancies, on critical points Chairmonte's testimony was corroborated, as the lower court noted. Lower ct. op. at 5–8. We determine that this error could not have contributed to the verdict.

■ Todt's sixth issue is:

Was the imposition of consecutive sentences for related inchoate crimes violative of section 906 of the Crimes Code which proscribes multiple convictions of related inchoate crimes?

Brief for Appellant at 2.

Todt notes that he was convicted of attempted homicide, criminal solicitation and criminal conspiracy. The sentence imposed for the homicide attempt was five to ten years; the sentence imposed for the criminal solicitation and conspiracy was also five to ten years, to be served consecutive to the first sentence. Todt argues that this sentencing violates 18 Pa.C.S. § 906, which provides: "A person may not be convicted of more than one offense defined by this chapter designed to commit or to culminate in the commission of the same crime." Todt reasons that because the attempt, the solicitation and the conspiracy all aimed at the same crime—the murder of Loretta Todt—Section 906 precludes his conviction for more than one inchoate crime.

In response, the Commonwealth argues that the crimes of attempted homicide and aggravated assault do not merge and that a separate sentence may be imposed for each conviction. Chairmonte conspired with Todt to commit homicide and committed a separate offense, aggravated assault, when he shot Loretta Todt. According to the Commonwealth, Todt is culpable as an accomplice in the shooting of his wife and is also culpable for attempted murder. Under the Commonwealth's theory, Todt was properly sentenced because aggravated assault and the inchoate offenses do not merge.

The Commonwealth's argument fails to take into account that Todt was not convicted of aggravated assault, he was convicted of attempted homicide, conspiracy and solicitation. The relevant statute does not speak in terms of merger but rather prohibits conviction for more than one inchoate offense. It is clear that all Todt's conduct was designed to culminate in the death of his wife, thus, his conviction of three inchoate offenses was improper under Section 906. *See e.g., Commonwealth v. Wanamaker*, 298 Pa.Super. 283, 444 A.2d 1176 (1982); *Commonwealth v. Turner*, 290 Pa.Super. 428, 434 A.2d 827 (1981); *Commonwealth v. Jackson*, 280 Pa.Super. 522, 421 A.2d 845 (1980); *Commonwealth v. Tingle*, 275 Pa.Super. 489, 419 A.2d 6 (1980); *Commonwealth v. Jones*, 272 Pa.Super. 444, 416 A.2d 539 (1979).

Therefore, we vacate the judgments of sentence for attempted homicide, criminal conspiracy and solicitation and remand to the trial court for proceedings and resentencing consistent with this opinion. Jurisdiction is relinquished.

SPAETH, J., files a concurring opinion.

SPAETH, Judge, concurring:

While I agree with, and join in, most of what the majority says, I believe some additional comment regarding Edward DePiso's testimony is required. The lower court held that the testimony was within the co-conspirator exception to the rule against hearsay evidence. The majority doesn't dis-

cuss this issue, only observing that "[a]t most, [the lower court's ruling] was harmless error." At 70. While I agree that the ruling was harmless error, I believe that it is important that we explain why it was error, so that in another case, in which it would not be harmless, the error may be avoided.

Sometime in March, before the shooting, appellant went to see John Chairmonte, who was at the time working on an automobile with a friend, Edward DePiso. Chairmonte stopped his work and went for a ride with appellant in appellant's pick-up truck. Chairmonte testified that during the ride, appellant gave him a gun and a box of bullets, and told him "[t]hat he wanted a babysitter shot." N.T. Vol. II at 19. The Commonwealth asked Chairmonte what he told DePiso after appellant dropped him off:

Q. [By the assistant district attorney] Did you talk to Eddie [DePiso] then?

A. Yes.

Q. How long were you gone?

A. I'd say about twenty minutes.

Q. Did you show Eddie the gun?

A. Yes, I did.

Q. What did you tell him?

A. I told him that the guy just dropped it off to me.

Q. Did you say that guy or did you use a name if you remember?

A. I don't remember.

N.T. Vol. II at 22.

Later the Commonwealth called DePiso, and he testified as follows:

Q. [By the assistant district attorney] Did John [Chairmonte] have the box of shells and the gun to your knowledge before Mr. Todt had arrived in his green truck?

A. No, he didn't.

Q. Did John say anything to you thereafter?

A. Yes. He said that's the guy that—

MR. FREEDMAN [defense counsel]: Objected to as to what he said.

MR. RUBENSTEIN [assistant district attorney]: It's been testified to by John Chairmonte, Your Honor.

THE COURT: All right. I'll permit it. You may answer.

THE WITNESS: John Chairmonte said, "That's the guy Todt that wants me to bump off his old lady."

N.T. Vol. IX at 72, 73.

Since DePiso's testimony of what Chairmonte said was offered for its truth—it had no relevance except as it was true—it was hearsay. The lower court held, however, that the testimony was admissible as within the co-conspirator exception to the rule against hearsay evidence. The majority doesn't discuss the issue raised by this ruling, only observing that "[a]t most, [the ruling] was harmless error." At 70. The issue, however, involves an aspect of the co-conspirator exception that our cases do not address, and I believe we should discuss it.

The co-conspirator exception "allows statements by a co-conspirator to be admitted against an accused if the statements are made during the conspiracy, in furtherance thereof, and where there is other evidence of the existence of a conspiracy." *Commonwealth v. Dreibelbis*, 493 Pa. 466, 475, 426 A.2d 1111, 1115 (1981). *See also, Commonwealth v. Hirsch*, 225 Pa.Super. 494, 311 A.2d 679 (1973). This exception extends to "declarations of acts of one conspirator made to third parties in the absence of his co-conspirator ... provided that such declarations were made during the conspiracy and in furtherance of the common design ...." *Commonwealth v. Wilson*, 394 Pa. 588, 607, 148 A.2d 234, 244 (1959) (citations omitted).

Chairmonte's statement to DePiso was made "during the conspiracy," for appellant had just given Chairmonte the gun and bullets, but it was not made "in furtherance" of the conspiracy. Although no Pennsylvania appellate court has explained the "in furtherance" requirement, several federal decisions have. These decisions are pertinent, for Federal Rule of Evidence 801(d)(2)(E) is virtually identical to the Pennsylvania rule; the only difference is that under the particular terminology of the Federal Rule a statement to a co-conspirator is "not hearsay," rather than being an exception to the rule against hearsay evidence.

Federal Rule of Evidence 801(d)(2)(E) provides:

A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

In *United States v. Moore*, 522 F.2d 1068 (9th Cir.1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976), the court found that a co-conspirator's statement to a third party was not in furtherance of the conspiracy because he was not "seeking to induce [the witness] to deal with the conspirators or in any other way to cooperate or assit in achieving the conspirators' common objectives.... Rather, the statement was, at best, nothing more than [the declarant's] casual admission of culpability to someone he had individually decided to trust." *Id.* at 1077 (citations omitted). In *United States v. Eubanks*, 591 F.2d 513 (9th Cir.1979) (*per curiam*), the court stated that "[s]ufficient evidence had to exist to support an inference that the statements were made in furtherance of the conspiracy, while the conspiracy was in existence...." *Id.* at 519. The court explained that "mere conversation between co-conspirators" or "merely narrative declarations" are not admissible as they are not in furtherance of the "common objectives of the conspiracy." *Id.* at 520. *See also, United States v. Fielding*, 645 F.2d 719 (9th Cir.1981).

Chairmonte's statement to DePiso, "That's the guy Todt who wants me to bump off his old lady," was not in furtherance of the conspiracy. Nothing indicates that Chairmonte was seeking DePiso's assistance. *Cf. Commonwealth v. Garcia*, 478 Pa. 406, 387 A.2d 46 (1978) ("Do you know anybody who would bump off her old man for a thousand dollars?"). Chairmonte's statement was "nothing more than [his] casual admission of culpability to someone he had individually decided to trust." Chairmonte's statement was therefore not within the co-conspirator exception, and DePiso's testimony quoting the statement should not have been admitted.

The question therefore arises whether the lower court's error in admitting DePiso's testimony requires a new trial. A new trial will not be granted if the error was harmless. In *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), the Supreme Court said that "an error cannot be held harmless error unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a ' "reasonable possibility" ' that an error ' "might have contributed to the conviction," ' the error is not harmless." *Id.*, 476 Pa. at 409, 383 A.2d at 164 (citations omitted). The appellate court must be convinced beyond a reasonable doubt that the error was harmless. *Id.*, 476 Pa. at 406, 383 A.2d at 162.

I am convinced beyond a reasonable doubt that DePiso's inadmissible hearsay statement did not contribute to appellant's conviction. Chairmonte himself testified that he was hired by appellant to kill Mrs. Todt. N.T. Vol. II at 40, 46, 47, 53, 60. Despite some inconsistencies, on critical points Chairmonte's testimony was corroborated. The opinion of the lower court adequately details this corroboration. Slip op. at 5–8. I am satisfied that had DePiso's statement not been admitted, the jury's verdict would have been the same.

I concur in the majority's order remanding the case for resentencing.