466 A.2d 1362

**COMMONWEALTH of Pennsylvania**

**v.**

**Alfred BENNETT, Appellant.**

Superior Court of Pennsylvania.

Argued May 25, 1982.

Filed Oct. 14, 1983.

Petition for Allowance of Appeal Denied Mar. 15, 1984.

Leonard Sosnov, Assistant Public Defender, Philadelphia, for appellant.

Ann C. Lebowitz, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, WIEAND and BECK, JJ.

BROSKY, Judge:

This appeal follows Mr. Bennett's conviction on charges of robbery and possession of an instrument of crime. The incident in question occurred on March 9, 1979 when a Philadelphia taxi driver was robbed at gunpoint by a black male who was accompanied by a black female. The perpetrators fled from the scene of the crime, but the driver, when shown photographs by the Philadelphia police, said that a photo of appellant looked like the man who committed the crime. Approximately three months later, on June 15, 1979, appellant was arrested and charged with having committed the robbery. He was tried before a judge and jury and convicted in February 1981 and sentenced to a term of imprisonment of 3 to 15 years on the robbery conviction; sentence was suspended on the other charge.

Appellant alleges several errors on appeal, but because we find merit in his allegation that his petition to dismiss the case for non-compliance with Pa.Rule Crim.Proc. 1100 should have been granted, we will not reach the remaining questions.

The procedural history of this case is not only complicated; it is also unique.

Appellant was arrested on June 15, 1979, on which date the complaint was filed. The automatic 180-day run date prescribed by Rule 1100 fell on December 12, 1979.[1] On September 16, 1980, trial having not yet commenced, the

---

1. Rule 1100 provides in relevant part:
    (2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred (180) days from the date on which the complaint is filed.

lower court granted a petition for extension of time filed by the Commonwealth and extended the period within which trial was to be held by sixty days. We believe that the court erred in granting this extension.

There is no dispute as to the timeliness of petitions to extend [2] filed by the Commonwealth. Petitions were filed on September 27, 1979 and December 5, 1979. Hearings were held on the extension petitions on July 16, 1980, August 28, 1980 and September 16, 1980 when the extension was granted. At those hearings, the procedural scenario was explained as follows.

From June 15, 1979 until August 10, 1979, appellant was not represented by counsel and was, therefore, the court found, unavailable for trial.

On August 10, counsel was appointed. The lower court found that the period between August 10 and August 22 counted towards the 180-day limit. That is, those 12 days "ran" against the Commonwealth.

Similarly, the 22 days between August 22 and September 13 are charged to the Commonwealth.

On September 13, the defendant failed to appear for a preliminary hearing. A bench warrant was issued.

On October 4, the lower court inadvertently ordered this case quashed. On January 8, 1980, the court rescinded its October 4 order. The period from September 13 to January 8 was counted against the appellant by the lower court. That is, it was excluded from the 180-day limit.

2. Rule 1100(c) stated at the time of the trial:
   (c) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced.

The court found that on January 30, 1980 appellant was served with a subpoena ordering him to appear in court on February 5, 1980. Although appellant disputes this finding, we will for the sake of argument, assume that in fact he was properly served.

Appellant failed to appear on February 5 and a bench warrant was apparently reissued on February 11 or February 13.

Appellant was located on April 30, 1980 in custody in Delaware County Prison.

A hearing was apparently scheduled on the Rule 1100 issue for May 9 or 19.[3] In either case, it was continued until May 27. At the July 16 Rule 1100 hearing, the prosecutor indicated that he did not know why the case was continued on that date.

The case was continued on May 27 to June 6. Again, no explanation was offered by the Commonwealth. The case was continued on June 6 to June 13, because, apparently, appellant was involved in a trial in Media, Pennsylvania.

The case was listed for June 13, June 25 and July 2 on all of which dates it was continued because the Quarter Sessions file could not be located. No explanation was offered as to its whereabouts or as to what efforts the prosecution made to secure the file and/or proceed to hearing.

On July 2, the appellant apparently sought a continuance. The first of three Rule 1100 hearings commenced on July 16.

We recently explained that our scope of review of orders granting petitions to extend requires us to consider the evidence presented by the Commonwealth and so much of the evidence presented by the defendant as, fairly read in the context of the record as a whole, remains uncontradict-

3. We observe that the record in this case is not only complicated, it is also unclear. We are compiling our facts from those presented at the hearings; the official docket entries are sparse and do not indicate the hearing dates.

ed. See *Commonwealth v. Ryan*, 306 Pa.Super. 159, 452 A.2d 264 (1982).

■ It is clear that the burden of seeing that trial is commenced rests on the Commonwealth, not the defendant. See *Commonwealth v. Brown*, 497 Pa. 7, 11 n. 7, 438 A.2d 592, 594 n. 7 (1981), in which our Supreme Court observed,

Under both the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution "[t]he Commonwealth cannot place the burden on the accused to bring himself to trial. (Citation omitted.)

At the time of this trial, Rule 1100(d) provided: [4]

(d) In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

(1) the unavailability of the defendant or his attorney;

(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded;

■ As we explained in *Commonwealth v. Ryan*, supra, 306 Pa.Super. at 165, 452 A.2d at 267, "[u]nder Rule 1100, all periods of delay beyond the mandatory period must be either excluded from the computation under Rule 1100(d) or justified by an order granting an extension under Rule 1100(c), if the Commonwealth is to prevail."

With these principles in mind, we turn again to the facts of the present appeal.

Neither party disputes the allocation of the period August 10 to September 13 to the Commonwealth.[5]

---

4. The rule was amended October 22, 1981, effective January 1, 1982.

5. The lower court expressed some uncertainty as to whether the period June 15 to June 19 should be included in the 180-day period. Because we find that the Commonwealth failed to try appellant timely even if this period is not included, we will not discuss it further. We express no opinion as to the allocation of time before August 10.

Appellant concedes that the period between September 13 and October 4 is excludable time. On September 13, the appellant failed to appear.

In *Commonwealth v. Cohen*, 481 Pa. 349, 355–56, 392 A.2d 1327, 1331 (1978), our Supreme Court held,

> Where ... the accused is aware of his obligation to appear and fails to do so, he may legitimately be held accountable for any resultant delay. Restated, where a warrant of arrest is involved the requirement of due diligence in the service of process is required before blame can be assigned to the suspect. Where the defendant is on bail and has notice of his obligation to appear and fails to do so, a concept of due diligence in apprehending the fugitive is misplaced in a speedy trial analysis. To rule otherwise would permit a defendant who intentionally absented himself from a scheduled court hearing to have the charges against him dismissed if the Commonwealth's efforts to locate him did not measure up to a court's standard of due diligence. Such a result is obviously absurd.
>
> *We therefore hold that a defendant on bail who fails to appear at a court proceeding, of which he has been properly notified, is unavailable from the time of that proceeding until he is subsequently apprehended or until he voluntarily surrenders himself. In such a case the Commonwealth is entitled to an exclusion of this period under section (d)(1) without the requirement of a showing of its efforts to apprehend the defendant during the period of his absence.* (Emphasis added.)

See also *Commonwealth v. Ressler*, 308 Pa.Super. 438, 454 A.2d 615 (1982) (it is not the intention of Rule 1100 to benefit a defendant who fails to live up to the requirement of bail).

■ The lower court excluded the period from October 4 to January 8 as well as that of September 13 to October 4 on the grounds that when appellant failed to appear on September 13 the Commonwealth was relieved of its obliga-

tion to prove due diligence. We do not believe that the *Cohen* holding applies to the October 4 to January 8 period.

*Cohen* focuses on the wrongdoing of a defendant who fails to appear. As the court wrote, supra, 481 Pa. at 354, 392 A.2d at 1330, "To focus solely upon the conduct of the Commonwealth not only ignores the defendant's dereliction of an obligation, but also places him in the position of possibly benefitting from his own wrongdoing."

On October 4, the lower court entered an order purporting to grant a petition to quash. The Public Defender, who represented appellant, advised him by letter of that date that the charges had been dropped and that he need not appear in court. Bail was subsequently returned to the appellant.

On January 8, 1980, apparently *sua sponte*, the lower court reversed its October 4 order. Apparently, the October 4 order had been made in error, a motion to quash not actually being before the court as to this case.[6]

In the period October 4 to January 8, the Commonwealth filed a petition to extend, pursuant to Rule 1100(c), but took no other action. It did not request reconsideration of the order by the lower court, or at least, no formal request was made. The record is not clear as to what caused the court to recognize its error in January. The Commonwealth did not, however, show that the error was corrected through its actions. No appeal was taken from the October 4 order. Certainly no action would be expected from appellant.

The Commonwealth urges us to find that since appellant failed to appear on September 13 and a bench warrant issued, that his failure to appear should count against him during the October to January period. Yet, the Commonwealth took no action when it saw that the case had been, effectively, dismissed. In the face of the October 4 order, how can we find appellant's failure to appear a wilful one that should be counted against him? *Cohen* is, after all,

6. We are not certain based on the record before us of what caused the error, but do not believe that fact to be relevant to our review.

based on the premise that a defendant who knows he has an obligation to appear fails to do so. Here, the unchallenged order of October 4 certainly indicates that appellant had no obligation to appear. Under these peculiar circumstances, we will not apply the *Cohen* rule.

Having decided that the October to January period is not automatically excludable, we consider whether the Commonwealth showed due diligence at that time. Not only does the record fail to disclose any effort by the Commonwealth to bring the case to trial, the prosecution disavows the obligation to show due diligence, contending that that period is excludable.

While we certainly find the circumstances regrettable, we nonetheless note that the burden is on the Commonwealth to prosecute its case. It cannot rest on a bench warrant issued on September 13 when the circumstances changed so drastically on October 4.

Including then, the period October 4 to January 8, we find that 131 days had run by that date.

The Rule 1100 court found the January 8 to 30 period chargeable to appellant based on his failure to appear in accord with the September 13 bench warrant.

On January 28, the lower court apparently directed the Commonwealth to serve appellant. The court found that he was served on January 30 and failed to appear on February 5. Therefore, the court charged the period January 30 to February 5 to the Commonwealth, the periods before and after that, to appellant.

The appellant argues that he was not properly served in January and also that when the case was reinstated on January 8, the September 13 bench warrant did not compel him to appear. Specifically, appellant claims that his father, not he, was served on January 30 and that he was not notified that the charges had been reinstated or that he was to appear on February 5.

■ Assuming arguendo that appellant was on notice on January 8 that the charges were reinstated,[7] the September 13 bench warrant compelled his appearance. In that event, the period January 8 to January 30, when, accepting the prosecution's side of the evidence, appellant was served, should be charged to appellant.

The period January 30 to February 5 would under any reading of this confused situation be counted towards the 180 day rule. By February 5 then, 137 days had run.

From February 5 to April 30, the appellant was not located. It is disputed as to whether his failure to appear was wilful (see *ante*), but we find that even if it were not, and the Commonwealth had a duty to search for him, that they exercised that obligation until April 30.

As recounted earlier, many delays ensued after April 30. With the exception of one week in June, attributable to the appellant, and perhaps two weeks from July 2 to July 16 attributable to him, the delay was not well explained. At the July 16 Rule 1100 hearing, the prosecution offered no reason for the continuances in May and suggested that the June 13, June 25 and July 2 delays were caused by the absence of the file for this case.

As to the month of May, it is clear that due diligence was not shown. We reach the same conclusion as to the remaining delays.

The Commonwealth argues that we should attribute the problems to judicial delay.

We explained in *Commonwealth v. Ryan*, supra, 306 Pa.Super. at 168, 452 A.2d at 268, that,

Although judicial delay can be the basis for an extension, the trial court may grant such an extension

"only upon a record showing; (1) the 'due diligence' of the prosecution and (2) certification that trial is scheduled for the earliest date consistent with the court's

---

7. We do not determine here whether appellant was on notice or whether the prosecution had a duty to show due diligence in informing him that the charges were reinstated. In any event, we find the extension improperly granted.

business; *provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the causes of the court delay and the reasons why the delay cannot be avoided." Commonwealth v. Mayfield,* 469 Pa. 214, 222, 364 A.2d 1345, 1349–1350 (1976). (Emphasis added.)

No effort was made by the prosecution to show why the delays in June and July could not be avoided. It rested simply on the statement that the file could not be found. By July 16, excluding the afore-described periods attributable to appellant, 193 days had passed. Two months later, the lower court extended the case another sixty days although the Commonwealth did not ask for such a long period and in fact indicated that it did not know much about the nature of the charges, since so much time had elapsed since the proceedings had begun.

We do not find evidence of due diligence that would have warranted the September 16, 1980 order. We cannot shift the burden of securing a speedy trial to the defendant, just because the case was unfortunately fraught with confusion and mismanagement. Under these circumstances, the benefit of the doubt must favor the appellant.

Judgment of sentence is vacated.

WIEAND, J., files dissenting opinion.

WIEAND, Judge, dissenting:

I respectfully dissent. In my judgment the majority's conclusion that the Commonwealth failed to comply with the mandate of Rule 1100 is unwarranted. Although I have no quarrel with the majority's recitation of the procedural history of this needlessly protracted case, I am unable to agree that the period after the informations had been quashed and before they were reinstated must be charged against the Commonwealth. Similarly, I am unable to agree that the Commonwealth failed to establish due diligence. Therefore, I am unable to join the majority's deci-

sion to order appellant's discharge. For reasons herein-after discussed, however, I would award a new trial.

On October 4, 1979, the trial court erroneously quashed informations charging Alfred Bennett with robbery and possession of an instrument of crime at the same time it properly granted a defense motion to quash informations charging Bennett with other offenses. The court rescinded its order with respect to the present charges of robbery and possessing an instrument of crime and reinstated the informations on January 8, 1980. The majority charges the intervening time against the Commonwealth for Rule 1100 purposes. I disagree. I am of the opinion that the learned trial judge was correct in holding this time excludable.

In *Commonwealth v. Johnson,* 487 Pa. 197, 409 A.2d 308 (1979), the Supreme Court held that the time period between a refusal to indict by one grand jury and the approval of an indictment by a second grand jury was excludable for purposes of determining compliance with Rule 1100. The court stated: "Rule 1100 is an administrative method by which we seek to give substance to the constitutional guarantee of a speedy trial for criminal defendants.... The speedy trial guarantee is 'concerned with limiting the period of "anxiety and concern accompanying public accusation." ' " *Id.,* 487 Pa. at 202, 409 A.2d at 310 quoting *Commonwealth v. Leaming,* 442 Pa. 223, 225, 275 A.2d 43, 44 (1971) and *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, 630 (1966). In the case *sub judice,* as in *Johnson,* the defendant was, during the period when he believed the charges quashed, "totally free from any anxiety or concern regarding these charges...." *Id.* 487 Pa. at 203, 409 A.2d at 311.

There was here no attempt on the part of the prosecution to evade the requirements of Rule 1100. The parties appear to be in agreement that the charges were mistakenly quashed by the trial court after it had been presented with a defense motion to quash only those charges arising out of a wholly separate incident. Thus, it was the action of the trial court and not conduct, direct or indirect, by the Com-

monwealth which caused a temporary termination of the prosecution. Because there was no attempt by the prosecution to circumvent Rule 1100, the interval of time between October 4, 1979 when the charges were quashed and January 8, 1980, when the trial court reinstated them, should not be charged against the Commonwealth but should be excluded.

I must also disagree with the majority's conclusion that the record fails to support the trial court's finding that the Commonwealth exercised due diligence in bringing Bennett to trial. On February 5, 1980, Bennett failed to appear for trial; and a bench warrant was issued for his arrest on February 11, 1980. He was not found until April 30, 1980, when he showed up in the Delaware County Prison. A timely Commonwealth extension petition was scheduled for hearing and continued on five separate occasions before a series of three hearings commenced on July 16, 1980. On May 27, 1980, the first extension hearing was continued because Bennett had not been brought from prison. A second hearing, scheduled for June 6, 1980, was continued because Bennett was then on trial in Media, Delaware County. Two other continuances were made necessary because the Clerk's file could not be found and was unavailable. On July 2, 1980, the hearing was continued at Bennett's request. Hearings were held on July 16, July 25, and August 28, 1980. On the last date, the Honorable Lynne M. Abraham took the matter under advisement because of its complex history. The Commonwealth's petition was granted on September 16, 1980, and the time for trial was extended for a period of sixty days. Thereafter, there was an additional extension, to which Bennett expressly agreed, until February 28, 1981. Trial commenced on February 9, 1981.

The original rundate for Rule 1100 purposes was December 12, 1979. However, the periods between October 4, 1979 and January 8, 1980 (96 days) and from February 5, 1980 to April 30, 1980 (85 days) were excludable. This excludable time caused the run date to be moved forward to

June 9, 1980. Although trial was thereafter delayed by the continuances of the hearing on the Commonwealth's extension petition, such delay cannot be attributed to a lack of due diligence on the part of the Commonwealth. Two delays were traceable directly to Bennett's motion for a continuance and to his presence in Delaware County for trial on other charges. The three remaining continuances, although unfortunate, were attributable to breakdowns in duties assigned to judicial officers and not to the prosecution. Therefore, I am forced to conclude, as did Judge Abraham, that the failure to commence trial within the time allowed by Rule 1100 was not attributable to a lack of due diligence by the Commonwealth. An extension, therefore, was properly granted.

Although I am unable to agree that Bennett is entitled to be discharged,[1] I am constrained to conclude that he must be granted a new trial for at least two reasons.

The trial court initially agreed to instruct the jury in accordance with *Commonwealth v. Sexton*, 485 Pa. 17, 400 A.2d 1289 (1979) that a request for a pre-preliminary hearing lineup had been denied, but then refused to do so. In my opinion, Bennett was entitled to such an instruction, and it was error to refuse to give it.

The only evidence connecting Bennett to the robbery was the identification testimony of the taxi driver who had been robbed. Defense counsel moved for a lineup prior to the preliminary hearing. The motion was denied when it was represented to the court that the victim had had a good opportunity to view the robber at the time and place of the offense and had identified Bennett from a photographic display shown to him immediately following the robbery. In fact, as was determined during a pre-trial hearing and again at trial, the victim had been unable to identify Bennett following the photographic display. He could say only that Bennett "looked like the man," but was unwilling or

1. There is absolutely no merit in appellant's additional contention that the trial court lacked subject matter jurisdiction to hear the charges against him.

unable to make a positive identification. A prompt pre-preliminary hearing lineup would have provided a less suggestive setting than the one-on-one confrontation provided by the preliminary hearing.

The harm in denying the pre-preliminary hearing lineup, however, could have been cured by instructing the jury that Bennett had been "denied the opportunity for a more objective identification and for that reason the subsequent less reliable identification could be viewed with caution." *Commonwealth v. Sexton, supra,* 485 Pa. at 25, 400 A.2d at 1293. The trial court ruled pre-trial and again during trial that such an instruction was appropriate and promised that the same would be given. In fact, the instruction was not given to the jury. The failure to give a *Sexton* charge was aggravated by the trial court's failure to convey fully to the jury the cautionary instructions required by *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954). Such a cautionary instruction is required where the testimony of an identification witness has been weakened by a prior inability to make a positive identification. The trial court, although reciting the positive aspects of the victim's opportunity to observe the robber, failed to instruct the jury regarding the effect of the victim's prior inability to identify Bennett as the robber.

Bennett is also entitled to a new trial because the jury was permitted to hear irrelevant and highly prejudicial evidence. Approximately three and one-half months after the robbery of the taxi driver, appellant was arrested in his apartment pursuant to a warrant charging him with a different offense. The Commonwealth, over objection, was permitted to show at trial in the instant case that when police arrived to make the arrest, appellant was found crouched and hiding in a darkened kitchen. In my judgment, Bennett's attempt to conceal himself, without more, did not show consciousness of guilt in connection with the charges in the instant case and should not have been received for that purpose.

As a general rule, evidence of flight or concealment to show guilty knowledge is admissible only when the circumstances are such as to justify an inference that the accused's actions were motivated by a belief that police officers were aware of his wrongdoing and were seeking him to prosecute therefor. The fact that the accused has been involved in other criminal activity, it has been held, affects the weight of the evidence but does not render it inadmissible. *Commonwealth v. Rough,* 275 Pa.Super. 50, 62, 418 A.2d 605, 611 (1980). In the *Rough* case, however, the accused was arrested for a rape which had occurred only two days before. "The mere fact that other criminal activity occurred at about the same time[,]" said the Court, "does not warrant barring this evidence."

However, the immediacy requirement is important. As the interval between the crime charged and the concealment expands, evidence of defendant's knowledge that he is being sought for the crime becomes an increasingly important factor in determining whether an inference of guilt concerning the specific crime charged can properly be drawn. See: *United States v. Jackson,* 572 F.2d 636, 640–641 (7th Cir.1978). See also: *United States v. Myers,* 550 F.2d 1036, 1051 (5th Cir.1977), *cert. denied,* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978); *United States v. White,* 488 F.2d 660, 662 (8th Cir.1973). Not only was there a three and one-half month delay in the instant case, but the police in fact were not seeking appellant to arrest him for the charge for which he was tried. Thus, it is difficult to perceive the legitimacy of an inference that he concealed himself because he was conscious of guilt on the offense for which he was being tried. An inference of guilty knowledge of the specific offense for which appellant was being tried in this case was so uncertain and ambiguous and the evidence so prejudicial that, in my judgment, it should not have been received. It did nothing to establish Bennett's guilt of the offense for which he was being tried and, therefore, was irrelevant. See: *Commonwealth v. Todt,* 318 Pa.Super. 55, 64–65, 464 A.2d 1226, 1230 (1983); *Com-*

*monwealth v. Simpson,* 316 Pa.Super. 115, 121–22, 462 A.2d 821, 824 (1983); *Commonwealth v. Krajci,* 283 Pa.Super. 488, 495, 424 A.2d 914, 917–918 (1981).

For these reasons, I would reverse the judgment of sentence and remand for a new trial.