664 A.2d 600

**COMMONWEALTH of Pennsylvania**

v.

**Charles C. BETZ, Appellant.**

Superior Court of Pennsylvania.

Submitted May 26, 1995.

Filed Aug. 29, 1995.

608

Anthony V. Clarke, Bradford, for appellant.

Erik Ross, Assistant District Attorney, Mt. Jewett, for Commonwealth, appellee.

Before WIEAND, DEL SOLE and CERCONE, JJ.

CERCONE, Judge:

This is a direct appeal from the judgment of sentence entered after a jury found appellant, Charles C. Betz, guilty of two counts of burglary.[1] We affirm.

During the late hours of July 10, 1991 and the early morning hours of the following day, appellant burglarized two churches located in McKean County, Pennsylvania. The police arrested appellant on July 13, 1991 for an unrelated offense, and incarcerated him in the Warren County Jail. A criminal complaint issued for the McKean County burglaries on July 18, 1991. The Docket Transcript attached to the criminal complaint indicates that appellant was formally arrested for the McKean County charges on July 18, 1991, while he was still being held in the Warren County Jail.[2]

---

1. 18 Pa.C.S.A. § 3502.

2. The Docket Transcript in this matter was not prepared until February 13, 1992 and the recitation in that document of July 18, 1991 as the formal arrest date appears to be incorrect. Appellant avers that the arrest occurred on October 18, 1992. Appellant's brief at 6. However,

The certified record also discloses that at all relevant times, appellant remained incarcerated in locations other than McKean County on charges unrelated to this appeal. The McKean County Court of Common Pleas repeatedly was forced to postpone appellant's preliminary hearing because appellant's presence was required in several different counties pursuant to other criminal proceedings unrelated either to the church burglaries or to the Warren County offense. The complexity of appellant's transportation arrangements caused the postponement of both his pre-trial criminal conference, and the date of his trial in McKean County.

The matter underlying this appeal was continued from the June 1992 term to the July 1992 term. On July 2, 1992, appellant entered a guilty plea on the church burglaries in exchange for the Commonwealth's agreement to drop other related charges, including two counts of theft and three counts of criminal trespass. Although the lower court accepted appellant's guilty plea, the Honorable John M. Cleland, P.J., subsequently refused to accept the Commonwealth's sentencing recommendation. The lower court consequently permitted appellant to withdraw his guilty plea. The matter was then scheduled for trial during the September 1992 term. However, the lower court had to postpone the trial because appellant was again unavailable in McKean County due to matters pending in other jurisdictions.

Appellant's jury trial commenced on October 19, 1992 before the Honorable P. Richard Thomas, specially presiding. The

this is obviously a typographical error as appellant's actual trial was conducted on October 19, 1992.

It is most probable that appellant was formally arrested on or about October 22, 1991, the date on which he signed an Affidavit of Rights indicating that he had been apprised of his various constitutional rights with regard to the criminal charges pending against him in McKean County. This time frame is corroborated within the Docket Transcript, which lists October 22, 1991 as the originally scheduled preliminary arraignment date. The first entry on the Court of Common Pleas docket transmitted to this court was not made until November 8, 1991, when William P. McVay, Esquire requested appointment of counsel for appellant due to a conflict of interest with the McKean County Public Defender's Office. The lower court appointed present counsel to represent appellant on December 3, 1991.

jury found appellant guilty on two counts of burglary. Appellant filed a motion for post-verdict relief on October 28, 1992. The Court of Common Pleas docket indicates that no action was taken on the motion until April of 1994, when the lower court heard argument on appellant's claims. After considering amended/supplemental briefs, Judge Thomas denied appellant's motion. The lower court conducted a sentencing hearing on October 4, 1994, at which time Judge Thomas sentenced appellant to serve a term of thirty (30) to sixty (60) months imprisonment, consecutive to unrelated sentences already imposed in Butler, Bradford, Clarion, Luzerne, Potter, Warren and Wyoming Counties. Appellant filed a motion for reconsideration, which the lower court denied in light of an amended sentencing order docketed October 12, 1994. The amended order clearly states that the burglary sentences of thirty to sixty months are concurrent to each other, but consecutive to the sentences imposed in the other counties.[3]

The instant timely appeal followed entry of the first amended sentencing order, and raises three issues for our consideration:

1. Should the Court below have dismissed the case pursuant to Rule 1100?

2. Was the evidence produced at trial by the Commonwealth insufficient as a matter of law and/or against the weight of the evidence to sustain a verdict of guilty for two (2) counts of burglary?

3. Did the Court's supplemental instructions to the jury go beyond the scope of their request and contain additional recitations that were prejudicial to the jury's deliberating process?

We shall address these claims *seriatim.*

■ Appellant first contends that the trial court erred in refusing to dismiss the McKean County burglary charges pursuant to Rule of Criminal Procedure 1100. In this regard,

3. The lower court also entered a clarification order on November 3, 1994 noting that appellant was entitled to fifty-seven (57) days credit for time served in other counties on a detainer related to the burglaries at issue in this case.

appellant claims that the case was unduly prolonged because the Commonwealth failed to exercise due diligence in securing his presence on the scheduled dates for hearings and other proceedings. Appellant acknowledges that the difficulties and delays resulted from the fact that he was incarcerated in various counties during the entire time at issue here and therefore had to be transported long distances to McKean County. However, he alleges that he had no control over his movements and that it was entirely up to the Commonwealth to arrange matters more efficiently.

Rule 1100 provides that trial shall commence within one hundred eighty days from the date on which a written complaint is filed when the defendant is incarcerated on that case. Pa.R.Crim.P., Rule 1100(a)(2), 42 Pa.C.S.A. However, the Commonwealth has three hundred sixty-five days in which to bring a defendant to trial when that defendant is not in custody related to the offense for which the complaint was filed. *Id.* § (a)(3). For the purposes of Rule 1100, "trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere.*" *Id.* § (b).

Appellant concedes that he was not incarcerated on the McKean County charges at any time prior to his trial. Thus, the three hundred sixty-five day provision governs this case. Appellant entered his guilty plea on July 2, 1992, three hundred fifty-one days after the filing of the McKean County criminal complaint.[4] A simple calculation shows that fourteen days of the Rule 1100 period remained when appellant tendered his guilty plea thereby extinguishing the original speedy trial requirement. *See Commonwealth v. Wamsher,* 395 Pa.Super. 384, 390–91, 577 A.2d 595, 598–99 (1990) (discussing effect on speedy trial rights of entering a guilty plea). On August 25, 1992 the trial court filed an order permitting appellant to withdraw his guilty plea. This effectively granted

4. For purposes of this analysis, we will accept the filing date of July 18, 1991 as recited on the Docket Transcript attached to the criminal complaint. We note that 1992 was a "leap" year having twenty-nine days in the month of February.

a new trial and commenced an entirely new speedy trial run date pursuant to Rule 1100. *Id.* at 391, 577 A.2d at 599.

When a new trial has been granted, the Commonwealth has one hundred twenty days to bring the matter to trial if the defendant is incarcerated on that case. Rule 1100(d)(1). Otherwise, the trial must commence within three hundred sixty-five days of the trial court's order. Instantly, appellant's trial began October 19, 1992, only seventy-nine days after the lower court permitted appellant to withdraw his guilty plea. The record thus clearly demonstrates that no violation of appellant's speedy trial rights occurred and the lower court correctly refused to dismiss the case pursuant to Rule 1100. *See also Commonwealth v. Kubin,* 432 Pa.Super. 144, 637 A.2d 1025 (1994) (discussing effect on calculation of speedy trial time periods when defendant is incarcerated in another jurisdiction).

Appellant presents a murky argument concerning the fact that the lower court "was fully aware of" the guilty plea entered July 2, 1992. The crux of this claim appears to be that, because the trial court ultimately rejected the Commonwealth's sentencing recommendation, the time between the guilty plea colloquy and the sentencing hearing should be charged to the Commonwealth. We cannot agree. The plain terms of Rule 1100 state that the relevant times for calculating speedy trial rights are the date on which a guilty plea is accepted and the date on which the trial court enters an order permitting withdrawal of the plea. The Rule does not address the reasons why a judge may permit a defendant to withdraw a plea, nor does the Rule require special treatment when a court declines to accept the Commonwealth's sentencing recommendations.

Appellant also contends that this case requires different treatment under Rule 1100 because it was so difficult for trial counsel to contact him to prepare a proper defense. However, appellant is entitled to no particular benefit because he chose to travel across the state into several different counties to prey upon their citizens. We decline to carve out a special exception for cases in which a person perpetrates a multi-

county crime spree which requires shifting the accused from one county jail to another in order to conduct the necessary hearings and trials. Although a prosecutor may rightfully expect cooperation and assistance from authorities in other jurisdictions, the District Attorney of McKean County has neither control nor direct influence over the court calendar or prosecution schedule of other counties. There is absolutely no suggestion in the record that the McKean County prosecutor failed to pursue appellant's case with due diligence and we decline to grant relief pursuant to Rule 1100.

■■■■ Appellant next argues that the evidence was insufficient to sustain the verdicts because the Commonwealth's witnesses were not as credible as the defense witnesses. This claim improperly combines issues which must be reviewed under entirely different legal standards. As our Supreme Court has recently explained:

It is well settled that the test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the trier of fact could have determined [that] all the elements of the crime have been established beyond a reasonable doubt.

*Commonwealth v. Hagan,* 539 Pa. 609, 613, 654 A.2d 541, 543 (1995). The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Seibert,* 424 Pa.Super. 242, 246, 622 A.2d 361, 363 (1993) (citing *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977) and *Commonwealth v. Libonati,* 346 Pa. 504, 508, 31 A.2d 95, 97 (1943)).

■■■■ By way of contrast, our review of a claim that a verdict is against the weight of the evidence is highly circumscribed; when presented with this type of argument, we are

limited solely to determining whether the lower court committed an abuse of discretion in failing to award a new trial. *Commonwealth v. Thompson*, 538 Pa. 297, 315–16, 648 A.2d 315, 324 (1994). The trial judge should grant relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Commonwealth v. Brown*, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). Unless there are facts and inferences of record that disclose a palpable abuse of discretion, the trial judge's reasoning should govern. *Id.* at 436, 648 A.2d at 1190. As the Supreme Court has noted, "a trial court's denial of a motion for new trial because the verdict is not opposed to the weight of the evidence is one of the least assailable of its rulings." *Id.* at 437, 648 A.2d at 1190 (internal quotation marks omitted).

The testimony of appellant's accomplice, James Haskins, directly links appellant to the burglaries at issue here. Mr. Haskins stated that he accompanied appellant in a green Ford van on the dates and time in question. The two men went to a church in Westline, Pennsylvania where Mr. Haskins "boosted" appellant through a window. Appellant exited through the church door and announced that there were antiques within the church. Appellant then went back inside the church, Mr. Haskins returned to the open window, and appellant began to hand furniture to Mr. Haskins through the aperture. The pair removed approximately twenty chairs from the church which Mr. Haskins hid in "a bunch of weeds" for pick up at a later time. When appellant and the accomplice returned for the furniture, Mr. Haskins noticed a person taking down the license number of the van. Nevertheless, the duo retrieved the antiques and placed them in the green Ford van. N.T. 10/19/92 at 48–51.

After leaving the Westline Church, appellant and his accomplice drove to a church located outside of Kane, Pennsylvania. The witness testified that appellant experienced great difficulty in opening the windows of this church because they had just been painted. With the assistance of a tire iron and a screw

driver, appellant eventually gained access to the interior of the church. Mr. Haskins stated that they removed another set of antique chairs which they placed in the van. They returned to Tidioute at around 6:30 or 7:00 a.m. and rested from their labors. *Id.* at 53–55.

Pamela Buffington testified that in July of 1991, she resided in her parents' home, which is directly across the street from the Westline Church. When she returned home from work in the early morning hours of July 11th, she noticed a van parked in front of the church. Because Ms. Buffington and her companion, Mark McCoy, both thought this was suspicious, the witness wrote down the license number of the van and saved it "for future reference." When Ms. Buffington learned that the church had been burglarized, she notified the State Police of the van's license number. *Id.* at 15–17.

Mr. McCoy testified that he picked Ms. Buffington up from her job at approximately 2:00 a.m. and drove her home. The witness stated that he thought it was "strange" for anyone to be at the church at such an early hour of the morning. For this reason, he specifically obtained the van's license plate number for Ms. Buffington. *Id.* at 18–19.

Trooper Scott Shipton of the Pennsylvania State Police testified that he investigated the Westline Church burglary and determined that the perpetrator had forced an entry into the building through a window. The officer's statement corroborated the testimony of appellant's accomplice as to the manner in which the burglary occurred. Trooper Shipton checked the license plate number Ms. Buffington provided, and learned that it was registered to a 1981 Ford owned by Robert A. Balase of Tidioute, Warren County, Pennsylvania. *Id.* at 31–32. Subsequent police investigation disclosed that this name is one of the aliases under which appellant has operated. *Id.* at 95–96 (testimony of Trooper Max Bizzak). The State Police recovered the stolen antique chairs and the property was identified by authorities from the two churches. *Id.* at 24–25 (testimony of Mrs. Carol Strand); 39–40 (testimony of the Reverend Donald Strand); 39–40 (testimony of the Reverend V. Theodore Benson). Reverend Benson corrobo-

rated Mr. Haskins' testimony concerning the manner in which the Lebanon Lutheran Church at Kanesholm, Pennsylvania was burglarized. *Id.* at 36–38. Both pastors testified that the antique chairs from the Westline Church were manufactured in the same style as those taken from the Lebanon Lutheran Church. Evidence was also introduced indicating that the Ohio antique dealer who purchased the stolen chairs identified appellant as the person who sold the merchandise to him. *Id.* at 100.

Our law is clear that guilt may be predicated solely upon the uncorroborated testimony of an accomplice. *Commonwealth v. Spencer,* 432 Pa.Super. 631, 637–38, 639 A.2d 820, 824 (1994), *appeal discontinued,* 538 Pa. 645, 647 A.2d 900 (1994) (citing *Commonwealth v. Goldblum,* 498 Pa. 455, 466, 447 A.2d 234, 240 (1982)). However, when parties in crime testify against one another, their testimony must be recognized as coming from a "corrupt source" and therefore must be subjected to the closest scrutiny. *Id.* (quoting *Commonwealth v. Todt,* 318 Pa.Super. 55, 63, 464 A.2d 1226, 1230 (1983)). In this case, Mr. Haskins' testimony was not uncorroborated—it was supported by the testimony of seven other witnesses. Moreover, the trial judge properly gave a "corrupt source" instruction as to Mr. Haskins' testimony. N.T. 10/19/92 at 152–154.[5] We therefore agree with the lower court's determination that the aggregate of the evidence presented at appellant's trial was sufficient, if believed by the jury, to sustain the convictions for burglary.

**5.** Appellant's brief complains that the trial court "neutralized" the "corrupt source" instruction by stating that accomplices often want to "spill the beans" and "get it off their chest." Appellant made no objection to the charge prior to the time when the jury left the courtroom to begin deliberations. The trial judge even asked defense counsel if he had any objections to the jury instructions. Counsel replied, "No, your Honor, I don't have any." N.T. 10/19/92 at 163. Consequently any challenge to the jury instructions has been waived. *See* Pa.R.Crim.P., Rule 1119(b), 42 Pa.C.S.A. (requiring preservation of challenge to jury instructions by means of a specific objection presented to the court before the jury retires to begin deliberating); *Commonwealth v. Fuller,* 396 Pa.Super. 605, 623 n. 11, 579 A.2d 879, 888 n. 11 (1990), *appeal denied,* 527 Pa. 585, 588 A.2d 508 (1991) (applying Rule 1119(b)).

■ We are cognizant of the fact that appellant presented three alibi witnesses who testified that he was at a location other than the churches during the time frame when the burglaries occurred. However, the jury was entitled to disbelieve the defense witnesses in favor of the testimony presented by the Commonwealth's witnesses. *Commonwealth v. Griscavage*, 512 Pa. 540, 546, 517 A.2d 1256, 1259 (1986); *Commonwealth v. Hamilton*, 376 Pa.Super. 404, 414, 546 A.2d 90, 95 (1988), *appeal denied*, 521 Pa. 629, 558 A.2d 531 (1989). Because we find nothing in the certified record which supports the conclusion that the lower court committed a palpable abuse of discretion in refusing to grant a new trial, there is no basis upon which we could reverse Judge Thomas' ruling. *See Commonwealth v. Brown, supra*, at 538 Pa. 410, 648 A.2d 1177 (fully discussing all the parameters governing a challenge to the weight of the evidence).

■ The final argument presented in this appeal is that the trial court erred in the supplemental instructions provided to the jury concerning the definitions of "theft" and "burglary." Appellant contends that the trial court exceeded the bounds of propriety by summarizing the Commonwealth's evidence after giving the supplemental charge. In particular, appellant contests the fact that the lower court made no mention of his alibi defense when summarizing the evidence.

■ After the jury has retired to consider its verdict, the trial judge may give additional or correctional instructions. Pa.R.Crim.P., Rule 1119(c), 42 Pa.C.S.A. In order to preserve a challenge to such a supplemental charge, defense counsel must make a *specific* objection *before* the jury returns to its deliberations. Rule 1119(b); *Commonwealth v. Fuller, supra*, at 396 Pa.Super. 605, 579 A.2d 879. In this case, the certified record merely indicates that the trial court "noted" defense counsel's exception to the supplemental instructions *after* the jury left the courtroom. N.T. 10/19/92 at 167. The record contains no clue as to the basis of the exception. Even where the jury charge is palpably in error, a defendant must lodge a specific and timely objection "lest his challenge to the charge be precluded on appeal." *Commonwealth v. Corley*, 432 Pa.Super. 371, 381–82, 638 A.2d 985, 990 (1994), *appeal denied*,

538 Pa. 641, 647 A.2d 896 (1994). We therefore find that appellant has waived this issue.

Purely for the sake of argument, however, we note that no relief is warranted here.

> It is within the province of the trial court to summarize evidence, so long as the court makes no material misstatements. Summarizing evidence is not the ˉequivalent of expressing an opinion as to the conclusions to be drawn from conflicting evidence.

*Commonwealth v. Pelzer*, 531 Pa. 235, 246, 612 A.2d 407, 413 (1992) (citations omitted). In this case, the trial judge did not summarize the evidence. After defining the meaning of the terms "theft" and "burglary," Judge Thomas merely reiterated the nature of the Commonwealth's charge against appellant and properly reminded the jury that they were the sole factfinders of matters relating to appellant's guilt or innocence:

> [The] Commonwealth's theory in this case is that the defendant in these cases went in the two church buildings with intent to steal something, that is commit theft when he got in there. If you are satisfied beyond a reasonable doubt that at the time he entered the building he did it with the intent to commit the crime of theft when he got in there, that is to steal the chairs, and you are satisfied of that beyond a reasonable doubt, he's guilty of burglary. If you are not so satisfied from all of the evidence then he's not guilty of burglary.

N.T. 10/19/92 at 165. These remarks were plainly an adjunct to the technical definition of the crime of burglary, and were intended merely to illustrate how to apply that definition. Moreover, the trial judge explicitly reminded the jury that they were to make their determinations based on the totality of the evidence. As such, the trial court's remarks provide no grounds for the grant of a new trial.

Judgment of sentence affirmed.