J-S10042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TASHAUN NORMAND | |
| Appellant | No. 2133 EDA 2014 |

Appeal from the Judgment of Sentence January 14, 2014
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0002847-2011

BEFORE:  GANTMAN, P.J., STABILE, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED MAY 18, 2015**

Appellant, Tashaun Normand, appeals from the judgment of sentence entered in the Monroe County Court of Common Pleas, following his jury trial convictions of forgery, four counts of access device fraud, unlawful use of a computer, criminal use of a communication facility, and identity theft.[1]  We affirm.

The trial court's Rule 1925(a) opinion sets forth the relevant facts and procedural history of this case as follows:

> In September of 2011, [Appellant] was charged with the crimes for which he was convicted, all of which stemmed directly or indirectly from the unauthorized use of credit

_____

[1] 18 Pa.C.S.A. §§ 4101(a)(2), 4106(a)(1)(ii), 7611(a)(1), 7512(a), and 4120(a), respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

cards and credit card information. Prior to trial, [Appellant] filed an omnibus pre-trial motion seeking dismissal of this case based on the Commonwealth's alleged violation of his right to a speedy trial, preclusion of testimony regarding what a witness observed on a Lowe's surveillance video, and *habeas corpus* relief. …

On October 23, 2013, following a three-day jury trial, [Appellant] was convicted of [forgery, four counts of access device fraud, unlawful use of a computer, criminal use of a communication facility, and identity theft]. He was acquitted of an additional count of [access device fraud].

On January 14, 2014, [the court] sentenced [Appellant], who had a substantial prior record, to an aggregate period of incarceration in a State Correctional Institution of not less than 5 years nor more than 10 years. [Appellant] was deemed ineligible for the RRRI program due to a prior conviction for battery.

On January 24, 2014, through his trial counsel, [Appellant] timely filed a post-sentence motion. New counsel was then appointed due to a conflict that arose when trial counsel joined the Monroe County Public Defenders' Office.

A hearing on the motion was scheduled far enough out to allow [Appellant's] new attorney to become familiar with the case. The hearing was then continued [twice] at the request of new counsel to give him more time to prepare.

(Rule 1925(a) Opinion, filed September 29, 2014, at 1-2) (internal citations omitted). On July 16, 2014, the court conducted a hearing on Appellant's post-sentence motion, which the court denied that same day. Appellant timely filed a notice of appeal on July 17, 2014.[2] On July 22, 2014, the

_____

[2] "A direct appeal in a criminal proceeding lies from the judgment of sentence." ***Commonwealth v. Patterson***, 940 A.2d 493, 497 (Pa.Super.
*(Footnote Continued Next Page)*

court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on July 23, 2014.

Appellant raises the following issues for our review:

> WHETHER THE [TRIAL] COURT ERRED IN FAILING TO DISMISS THE CASE AGAINST APPELLANT PURSUANT TO PA.R.CRIM.P. 600.

---

*(Footnote Continued)* ───────────────

2007), *appeal denied*, 599 Pa. 691, 960 A.2d 838 (2008). If a defendant in a criminal case files a timely post-sentence motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion. Pa.R.Crim.P. 720(A)(2)(a). The denial of a timely post-sentence motion becomes the triggering event for filing a notice of appeal. Pa.R.Crim.P. 720(A)(2). Generally, where a defendant timely files a post-sentence motion, the court shall decide the motion within 120 days of the filing; otherwise, the motion shall be deemed denied by operation of law. ***See*** Pa.R.Crim.P. 720(B)(3)(a). A clerk of courts' failure to enter an order stating a post-sentence motion has been denied by operation of law and to furnish the parties with a copy of the order, however, constitutes a breakdown in the court system. ***Commonwealth v. Braykovich***, 664 A.2d 133, 138 (Pa.Super. 1995). Such a breakdown warrants extension of the appeal period or the grant of an appeal *nunc pro tunc*. ***Id.*** Instantly, the record makes clear Appellant timely filed his post-sentence motion on January 24, 2014. Nevertheless, the court did not hold a hearing until July 16, 2014, which was outside 120 days of the filing of Appellant's motion (no extension was requested). Thus, the post-sentence motion was deemed denied by operation of law. Moreover, the clerk of courts failed to enter a Rule 720(B)(3)(c) order on behalf of the court, which constitutes a breakdown in the court system. ***See id.*** The court eventually denied the post-sentence motion after the hearing on July 16, 2014. Therefore, we will treat the July 16, 2014 order as a Rule 720(B)(3)(c) order solely for purposes of the date on which this appeal period began to run. Appellant timely filed his notice of appeal on July 17, 2014, within the 30-day appeal period, so we have no impediment to appellate jurisdiction. ***See Patterson, supra*** (stating appellate court can raise issue of jurisdiction *sua sponte*).

WHETHER THE [TRIAL] COURT ERRED BY ALLOWING A WITNESS TO TESTIFY AT TRIAL REGARDING HIS RECOLLECTION OF WHAT HE HAD SEEN ON A VIDEOTAPE, DESPITE THE FACT THAT THE TAPE WAS NOT INTRODUCED AS EVIDENCE, IN VIOLATION OF THE BEST EVIDENCE RULE.

(Appellant's Brief at 7).

In his first issue, Appellant argues his case should have been dismissed pursuant to Pa.R.Crim.P. 600.[3] Appellant claims the Commonwealth failed to take any action to bring Appellant's case to trial within the time requirements of Rule 600. Specifically, Appellant alleges the Commonwealth filed a criminal complaint against Appellant on September 20, 2011, and more than one year passed before Appellant entered his guilty plea on October 22, 2012. Appellant contends the Commonwealth failed to provide any evidence to explain why approximately thirteen months passed without prosecution. Appellant also asserts the Commonwealth's decision to enter into a plea agreement and then refuse to abide by the terms of that agreement with regards to sentencing forced Appellant to withdraw his guilty plea. Appellant maintains his Rule 600 waiver is not relevant to the

_____

[3] Appellant also argues the Commonwealth's failure to bring his case to trial within a timely fashion violates Appellant's constitutional right to a speedy trial. Nevertheless, Appellant failed to raise a constitutional claim in his Rule 1925(b) statement. Therefore, it is waived. **See Commonwealth v. Castillo**, 585 Pa. 395, 403, 888 A.2d 775, 780 (2005) (stating: "[a]ny issues not raised in a [Rule] 1925(b) statement will be deemed waived"); **Commonwealth v. Berryman**, 649 A.2d 961, 973 (Pa.Super. 1994) (holding "[c]onstitutional issues…can be waived").

calculation of time from the date the Commonwealth filed the complaint because Appellant executed the waiver after he withdrew his guilty plea when the Rule 600 time had already expired. Appellant concludes this Court should vacate his judgment of sentence and dismiss Appellant's convictions. We disagree.

"In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." ***Commonwealth v. Hunt***, 858 A.2d 1234, 1238 (Pa.Super. 2004) (*en banc*), *appeal denied*, 583 Pa. 659, 875 A.2d 1073 (2005).

> The proper scope of review…is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> \* \* \*
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.

*Id.* at 1238-39 (internal citations and quotation marks omitted).

The version of Rule 600 in effect at the relevant time of Appellant's case provided, in pertinent part:

> **Rule 600.  Prompt Trial**
>
> \*    \*    \*
>
> (D)(1)  When a trial court has granted a new trial and no appeal has been perfected, the new trial shall commence within 120 days after the date of the order granting a new trial, if the defendant is incarcerated on that case.  If the defendant has been released on bail, trial shall commence within 365 days of the trial court's order.

Pa.R.Crim.P. 600(D)(1) (prior version).[4]  An order permitting an appellant to withdraw his guilty plea "effectively grant[s] a new trial and commence[s] an entirely new speedy trial date pursuant to Rule [600]." **Commonwealth v. Betz**, 664 A.2d 600, 613-14 (Pa.Super. 1995) (citation omitted).  To obtain relief, however, a defendant must have a valid Rule 600 claim at the time he files his motion for relief.  **Hunt, supra** at 1243.

Instantly, the trial court's omnibus opinion discussed Appellant's Rule 600 claim as follows:

> [T]he Commonwealth argues that, on its face, Rule 600 was restarted when [Appellant] was granted a new "trial" on November 6, 2012, *i.e.* when [Appellant] was allowed to withdraw his guilty plea.  Thus, the grant of a new trial extended the trial commencement period.

---

[4] A new version of Rule 600 went into effect on July 1, 2013, after the trial court disposed of Appellant's Rule 600 motion.

In arguing that Rule 600 has been violated, [Appellant] relies on both the timeframe before and after the [withdrawal] of his guilty plea. [Appellant] counters that he withdrew his guilty plea because of the Commonwealth's violation of their plea agreement. Thus, says [Appellant], the Commonwealth should not be allowed to benefit from its improper conduct. However, [Appellant] asserts a violation of the plea agreement but provides no evidence. The Commonwealth is required to prove it acted with due diligence, not that it did not breach any plea agreement. We cannot confirm or deny [Appellant's] allegation of a breach and we disregard his argument insofar as it relies on that basis. As such, based on the clear wording of Rule 600, the mechanical run date restarted on November [6], 2012. …

Here, considering the extension of the rundate, the record indicates [Appellant] executed a Rule 600 Waiver of the time periods between January 3, 2013 and March 1, 2013. [Appellant] also filed an Omnibus Motion on February 8, 2013; any time after this period is tolled for purposes of Rule 600. On its face, the rundate has not yet elapsed.

(Omnibus Opinion, filed June 28, 2013, at 5-6) (internal footnotes omitted).

We accept the court's conclusion. Appellant's trial run date after the withdrawal of his guilty plea was March 6, 2013. *See* Pa.R.Crim.P. 600(D)(1) (prior version); *Betz, supra*. Appellant filed his Rule 600 omnibus pretrial motion on February 8, 2013. Therefore, Appellant's Rule 600 motion was premature when filed. *See Hunt, supra* at 1243 (stating that to obtain relief, defendant must have viable Rule 600 claim when he files his motion for relief). Accordingly, Appellant's first issue merits no relief.

In his second issue, Appellant argues Officer Dan Jones' testimony

about what he saw on the Lowe's videotape violated the best evidence rule because the video was not introduced at trial. Appellant contends Officer Jones' testimony was inadmissible secondary evidence, as Officer Jones did not personally observe Appellant commit the crimes. Appellant alleges the original videotape should have been produced but was stored in a manner that resulted in the wrong video being turned over to the police. Appellant maintains that allowing Officer Jones to testify on the content of the videotape violates the best evidence rule because the video captured Appellant committing the crimes, which was evidence material to the Commonwealth's case. Appellant concludes this Court should vacate and remand for a new trial. We disagree.

An error at trial does not automatically entitle an appellant to a new trial. **Commonwealth v. Reese**, 31 A.3d 708, 719 (Pa.Super. 2011) (*en banc*). "[T]he harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial…." **Id.** (quoting **Commonwealth v. West**, 834 A.2d 625, 634 (Pa.Super. 2003), *appeal denied*, 586 Pa. 712, 889 A.2d 1216 (2005)).

> An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless. In reaching that conclusion, the reviewing court will find an error harmless where the uncontradicted evidence of guilt is overwhelming, so that by comparison the error is insignificant.

*Commonwealth v. Mitchell*, 576 Pa. 258, 280, 839 A.2d 202, 214-15 (2003).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Jonathan Mark, we conclude Appellant's second issue does not merit relief. The court's Rule 1925(a) opinion comprehensively discusses and properly disposes of the question presented. (**See** Rule 1925(a) Opinion at 7) (finding: Lowe's loss prevention manager testified videotape was lost through no fault of Commonwealth, and Lowe's sent wrong footage to police and recycled correct footage pursuant to Lowe's standard thirty-day period policy; when police discovered mistake it was too late because security footage had been recycled; there was more evidence than just testimony about what Officer Jones had seen on videotape, including signed document from Lowe's with Appellant's signature of fictitious name, photograph from camera showing Appellant at Lowe's, and cardboard box at Appellant's residence related to Lowe's transaction; this evidence was properly admitted). The record supports the court's decision; therefore, we see no reason to disturb it. Moreover, the court properly determined any error that resulted from the admission of testimony regarding the videotape was harmless. Accordingly, we affirm Appellant's second issue on the basis of the court's Rule 1925(a) opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/18/2015

**COURT OF COMMON PLEAS OF MONROE COUNTY**
**FORTY-THIRD JUDICIAL DISTRICT**
**COMMONWEALTH OF PENNSYLVANIA**

| | |
|---|---|
| **Commonwealth of Pennsylvania** | : **2847 Criminal 2011** |
| | : |
| **v.** | : |
| | : |
| **Tashaun Normand** | : **APPEAL NO. 2133 EDA 2014** |

## OPINION IN SUPPORT OF ORDER PURUSANT TO PA. RAP 1925(a)

Defendant Tashaun Normand ("Normand") filed a timely appeal from the Judgment of Sentence entered on January 14, 2014, following his jury trial convictions for Forgery, four counts of Access Device Fraud, Unlawful Use of a Computer, Criminal Use of a Communication Facility, and Identity Theft. After the appeal was filed, we issued an order directing Normand to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). Normand complied, and we now file this opinion in accordance with Pa. R.A.P. 1925(a).

In September of 2011, Normand was charged with the crimes for which he was convicted, all of which stemmed directly or indirectly from the unauthorized use of credit cards and credit card information. Prior to trial, Normand filed an omnibus pre-trial motion seeking dismissal of this case based on the Commonwealth's alleged violation of his right to a speedy trial, preclusion of testimony regarding what a witness observed on a Lowe's surveillance video, and *habeas corpus* relief. By opinion and order dated June 28, 2013 (the "Prior Opinion"), the Honorable Stephen

1

M. Higgins denied Normand's motion. We incorporate Judge Higgins' opinion into this opinion by reference.

On October 23, 2013, following a three-day jury trial, Normand was convicted of the crimes referenced above. He was acquitted of an additional count of Access device Fraud.

On January 14, 2014, we sentenced Normand, who had a substantial prior record, to an aggregate period of incarceration in a State Correctional Institution of not less than 5 years nor more than 10 years. Normand was deemed ineligible for the RRRI program due to a prior conviction for battery.

On January 24, 2014, through his trial counsel, Normand timely filed a post-sentence motion. New counsel was then appointed due to a conflict that arose when trial counsel joined the Monroe County Public Defenders' Office.

A hearing on the motion was scheduled far enough out to allow Normand's new attorney to become familiar with the case. The hearing was then continued at the request of new counsel to give him more time to prepare.

Subsequently, counsel for Normand filed a second motion for continuance. He then asked for a conference with the Court and the assigned assistant district attorney. During the conference, counsel for Normand requested that the hearing be continued for several months in order to allow Normand the opportunity to cooperate with authorities on other matters. The Commonwealth concurred. The Court pointed out that, while Normand could ask for one 30-day extension of the deemed denial provisions of Pa. R.Crim.P. 720, granting the lengthy extension he requested could result in a deemed denial of Normand's post-sentence motion and might even impact

2

Normand's ability to appeal. *See* Pa. R.Crim.P. 720. Counsel indicated that he and Normand were aware of the applicable time considerations, but Normand nonetheless wanted to pursue the cooperation option.

The hearing was continued until July 16, 2014. During the period between the conference and the hearing, Normand did not file a motion seeking a 30-day extension of the deemed denial period. *See* Pa. R.Crim. P. (B)(3)(b). For unknown reasons, the Clerk of this Court did not enter an order of denial pursuant to Pa. R. Crim. P. (B)(3)(c) at either the 120 or 150 day marks.

On July 16, 2014 – 173 days after the post-sentence motion was filed – the hearing on the motion was convened as scheduled. Counsel for both parties stated their positions on procedural and substantive matters. We spent substantial time summarizing the procedural history of the case and analyzing the deemed denial provisions of Rule 720 and interpretative case law. In the end, we determined that under the unique circumstances of this case Normand's motion was deemed denied by operation of law after 150 days, rather than after 120 days, and that because of the deemed denial we were accordingly without power or authority to decide the motion. (N.T., 7/16/2014, pp. 16-23). (*See Commonwealth v. Bentley*, 831 A.2d 668, 672 (Pa. Super 2003) ("If the judge fails to decide the motion within the applicable time, then [Rule 720] provides, in mandatory terms, 'the motion shall be deemed denied by operation of law.' Any action the judge takes thereafter is a nullity") (internal citations omitted)). In then alternative, and in case our analysis was later deemed erroneous, we summarized the reasons why we believed that the motion was without merit. Further, we expressed the belief that Normand still had time to

3

appeal because: 1) measured from the 150 day deemed denial date, the 30-day appeal period had not yet expired; and 2) our Clerk had not entered a denial order. (*See Commonwealth v. Khalil*, 806 A.2d 415, 419-20 (Pa. Super. 2002) (The defendant's appeal of denial by operation of law of his post-sentence motion was reviewable despite defendant's failure to file appeal within 30 days following denial by operation of law, as required by rule of criminal procedure, where failure of clerk of courts to issue order on date that defendant's post-sentence motions were deemed denied was breakdown of processes of trial court, thereby depriving defendant of notice of direct appeal rights)). Alternatively, in the event our analyses were not accepted, we granted Normand's oral motion for permission to appeal *nunc pro tunc*. (N.T., 7/16/2014, pp. 16-23). At the end of the hearing, we issued an order distilling our determinations and commemorating our findings. (Order dated July 16 and entered July 18, 2014). We incorporate the order and our on-record statements and analyses into this opinion by reference.

On July 17, 2014, the next day, Normand filed this appeal. On appeal, he contends that:

> 1. [We] ... erred by denying Normand's pre-trial Motion to Dismiss based upon a violation of Rule 600 of the Pennsylvania Rules of Criminal Procedure;
>
> 2. [We] ... erred by allowing a witness to testify at trial regarding his recollection of what he had seen on a videotape in violation of both the Best Evidence Rule and the rule against hearsay; and
>
> 3. ...The verdict(s) in this case were against the weight and sufficiency of the evidence presented at trial.

(Normand's Rule 1925(b) Statement, filed July 23, 2014, Paragraph 4(a)(c)).

4

## DISCUSSION

Before substantively addressing Normand's assignments of error, we note that there may be an issue regarding the timeliness of this appeal. For the reasons stated on the record during the July 16, 2014 hearing as well as those summarized above, we believe the 150 day deemed denial is the operative denial and that this appeal is timely filed. However, since Normand was aware of the risks of continuing the hearing on his post-sentence motion for several months and did not request the one-time 30-day extension of the deemed denial period, it may also be argued that Normand's motion was deemed denied on the 120th day after it was filed and, as a result, that this appeal filed 54 days later is untimely. As indicated, we do not find this to be the case. Further, we believe that our alternative decision to allow Normand to appeal *nunc pro tunc* is sound. We flag this potential issue only because has jurisdictional implications.

Assuming that this appeal will be heard on the merits, we address Normand's assignments of error as follows:

Pre-trial Rule 600 Motion

In his first assignment of error, Normand contends that we erred in denying his pre-trial motion based upon violation of Rule 600 of the Pennsylvania Rules of Criminal Procedure. Our reasons for denying the motion are explained in detail in the Prior Opinion. The Rule 600 issue raised by Normand on appeal is adequately, properly, and fully addressed in the Prior Opinion.

5

## Best Evidence and Hearsay Evidentiary Challenge

In his second assignment of error, Normand contends that we erred by allowing a witness to testify at trial regarding what the witness had seen on a videotape in violation of both the Best Evidence Rule and the rule against hearsay, an issue he first raised in his omnibus pre-trial motion. Our reasons for denying the motion and allowing the testimony are explained in detail in the Prior Opinion. The Prior Opinion adequately and properly addresses this issue.

To what we stated in the Prior Opinion, we add only that we further believe the allowance of this testimony was proper under *Commonwealth v. Dent*, 837 A.2d 571, 574 (Pa. Super. 2003). In *Dent*, a shoplifter was arrested and convicted of shoplifting. As part of her appeal, the defendant argued that her attorney was ineffective because he failed to argue that testimony based off a surveillance tape did not meet the Best Evidence Rule. *Id.* at 588. Specifically in that case, the store manager testified that the original tape had been destroyed due to the surveillance system's need for a new hard drive shortly after the incident of shoplifting. *Id.* at 575. The Court originally refused to allow any testimony relating to the content of the surveillance tape, but, after the testimony of the store manager regarding its destruction, both the store manager and a police officer who viewed the security footage before its destruction were allowed to testify about what they had seen on the tape. *Id.*

While we recognize that *Dent* also noted that the testimony regarding the lost footage was allowed because it was not used to prove any element of an offense

6

charged, but instead was used to prove presence and identity, we believe the holding and rationale are still applicable, especially in light of the *Dent* court's discussion of *Commonwealth v. Lewis*, the case on which Normand chiefly relies. *See id.* at 590. As *Dent* explains, in *Lewis,*

> [the] officer's testimony at trial as to appellant's alleged act of retail theft was based solely upon police officer's review of surveillance videotape, and explanation concerning unavailability of videotape was unsatisfactory; and police officer's testimony was not harmless error, because other properly admitted evidence was not so overwhelming, police officer's testimony was not cumulative, and his testimony was not tangential or de minimus."

*Dent*, 837 A.2d 590 (citations omitted).

Here, unlike in *Lewis*, there is a satisfactory explanation for the unavailability of the videotape. Specifically, Lowe's loss prevention manager explained that the videotape was lost through no fault of the Commonwealth. Instead, it was Lowe's that sent the wrong footage and then recycled the correct footage after the standard 30-day period set forth in store policy. By the time the mistake was discovered, it was already too late to fix as the security footage had been recycled. Also, in this case there was evidence over and above the testimony about what was seen on the videotape, including a signed document from Lowe's with a signature made by Normand in a fictitious name, a still photo from the camera showing Normand at Lowe's, and a cardboard box related to the transaction at Normand's residence. For these reasons, we believe this evidence was properly allowed.[1]

---

[1] For the same reasons, we also believe that any error in allowing the testimony constituted "harmless error."

7

Sufficiency and Weight of the Evidence

Finally, Normand alleges that the verdict was against both the weight and the sufficiency of the evidence. Given the evidence presented at trial, this assignment of error is clearly without merit.[2]

Initially, we believe that this assignment of error has not been preserved, or at least not fully preserved, for appellate review. In this regard, "a post-verdict motion, either that 'the evidence was insufficient to support the verdict,' or that 'the verdict was against the weight of the evidence,' will preserve *no* issue for appellate review unless the motion goes on to specify *in what respect* the evidence was insufficient, or *why* the verdict was against the weight of the evidence." *Commonwealth v. Holmes*, 461 A.2d 1268, 1270 (Pa. Super. 1983). In *Holmes*, the Superior Court gave this example of a sufficiently specific motion: 'that the identification testimony was so vague, and the alibi testimony so powerful, that the verdict shocks the conscience.'" *Commonwealth v. MacSherry*, 537 A.2d 871, 873 (Pa. Super. 1988) (citations omitted).

In this case, the operative portions of Normand's post-sentence motion did not specify why the verdict was against the weight of the evidence. This is especially true regarding the Identity Theft and Criminal Use of a Communication Facility charges since they were not even mentioned. Instead, the motion, ignoring the applicable standards, conclusorily reiterated Normand's arguments and theory of the case, both of which were rejected by the jury. Nothing is alleged that would lead to the

---

[2] In addition to the reasons stated in this opinion, Normand's weight and sufficiency challenges are meritless for the reasons we articulated during the hearing on Normand's post-sentence motion. (N.T., 7/16/2014, pp. 20-21). We reiterate and incorporate our on-record statements into this opinion.

8

conclusion that the verdict shocks the conscience or that justice was denied. Accordingly, we believe that Normand has failed to preserve his weight claim. At minimum, he has waived any weight challenge to the convictions for Identity Theft and Criminal Use of a Communications facility.

Along similar lines, Normand failed to preserve his challenge to the sufficiency of the evidence. "If [an] Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient." *Commonwealth v. Manley*, 985 A.2d 256, 262 (Pa. Super. 2009). Here, Normand's Rule 1925(b) statement recites only the standard, boilerplate contention that the "verdict(s) in this case were against the weight and sufficiency of the evidence presented at trial." This general claim clearly does not state the element or elements of which there was insufficient evidence.

The generality of this boilerplate is not remedied by the fact that Normand's post-sentence motion contained additional verbiage. Again, neither Identity Theft nor Criminal Use of a Communication Facility is mentioned in the motion. As to Forgery, Normand does baldly aver that there "was no evidence of forgery." However, under the applicable standards, that assertion is fallacious and in any event not supported by the facts.[3] Further, as discussed, the challenge to the remaining charges merely reiterates Normand's beliefs and characterization of the evidence which were not

---

[3] Normand's post-sentence motion does contend that, without the Lowes' video testimony we ruled admissible, the Forgery conviction cannot stand. However, as discussed *infra*, when reviewing a sufficiency challenge all evidence admitted at trial must be considered. In addition, for the reasons stated, our evidentiary ruling regarding the video was correct. Finally, there was, in fact, other evidence, direct and circumstantial, that supported the jury's verdict.

9

accepted by the jury. Simply, Normand did not preserve his challenge to the sufficiency of the evidence.

In the alternative, even a quick review of the record demonstrates that there was ample evidence to support the jury's verdict. Accordingly, Normand's weight and sufficiency challenges do not hold water.

A claim challenging the sufficiency of the evidence is:

> [A] question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused beyond a reasonable doubt.... When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (citations omitted). All evidence admitted at trial is considered when reviewing a sufficiency of evidence claim. See *Commonwealth v. Williams*, 650 A.2d 420, 424 (Pa. 1994), and *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001), *appeal denied*, 806 A.2d 858 (Pa. 2002). The established facts and circumstances,

> do not have to be absolutely incompatible with the accused's innocence, but any doubt is for the factfinder unless the evidence is so weak and inconclusive that no probability of fact can be drawn from the totality of the circumstances as a matter of law....
>
> Existence of inconsistencies in the testimony of a witness does not alone render evidence insufficient to support a verdict....

*Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003) (internal citations and quotation marks omitted), *appeal denied*, 879 A.2d 782 (Pa. 2004). The trier of fact,

10

while passing upon the credibility of witnesses, is free to believe all, part, or none of the evidence. *Commonwealth v. Dupre*, 866 A.2d 1089 (Pa. Super. 2005).

Here, after a three-day trial, Normand was convicted of Forgery, four counts of Access Device Fraud, Identity Theft, Unlawful Use of a Computer, and Criminal Use of a Communication Facility. With respect to these crimes:

Forgery is defined in Section 4101 of the Pennsylvania Criminal Code as follows:

> **(a) Offense defined.**--A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:
> (1) alters any writing of another without his authority;
> (2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or
> (3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

18 Pa.C.S.A. § 4101(a). "'Writing' includes printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, electronic signatures and other symbols of value, right, privilege, or identification." § 4101(b). To sustain a conviction for the crime of Forgery, the Commonwealth must prove beyond a reasonable doubt the following three elements: "(1) the false making of some instrument in writing, (2) the instrument must be apparently capable of effecting a fraud and working an injury to another and (3) there must be a fraudulent intent." *Commonwealth v. DiPiero*, 208 A.2d 912, 914 (Pa. Super. 1965).

11

In this case, the trial evidence, both direct and circumstantial, established beyond a reasonable doubt the elements of Forgery. The Forgery charge stemmed from a transaction at Lowes where Normand picked up bar stools that he fraudulently purchased using the credit card number of the primary victim, Michelle Bickford. The evidence showed that, to pick up the bar stools, defendant signed the name "Tyrelle Boynton" on a loading ticket. The Commonwealth presented the slip and a blow up of the signature on the slip. The writing appeared to be Normand's. In addition, in the challenged testimony regarding the security video, Officer Dan Jones, the investigating detective from the Pocono Mountain Regional Police Department, testified that the video depicted Normand at Lowe's at the time the slip was signed and the bar stools were picked up and also showed him leaving the store with them. Similarly, a still image taken from the video places Normand at Lowe's when the stools were picked up. In addition, a cardboard box related to the transaction was found at Normand's residence. Further, as discussed below, there was ample evidence that Normand illegally acquired and fraudulently used Ms. Bickford's credit card information to purchase several items other than the bar stools, and the name "Tyrelle Boynton" was found on various shipping labels at Normand's residence. This evidence was sufficient to support the Forgery conviction.

The remaining crimes may be discussed together. A person commits the offense of Access Device Fraud if he:

> (1) uses an access device to obtain or in an attempt to obtain property or services with knowledge that:
> (i) the access device is counterfeit, altered or incomplete;

12

> (ii) the access device was issued to another person who has not authorized its use;
> (iii) the access device has been revoked or canceled; or
> (iv) for any other reason his use of the access device is unauthorized by the issuer or the device holder[.]

18 PA.C.S.A. § 4120(a)(1). "Access Device" includes credit card within its definition. §4120(d).

A person commits the offense of Identity Theft "of another person if he possesses or uses, through any means, identifying information of another person without the consent of that other person to further any unlawful purpose. 18 PA.C.S.A. § 4120(a). Identifying information includes credit card numbers. *See Commonwealth v. Newton*, 994 A.2d 1127, 1135 (Pa. Super. 2010) (discussing how the use of credits cards would have met the element of identifying information).

A person commits the offense of unlawful use of a computer if:

> [H]e accesses or exceeds authorization to access, alters, damages or destroys any computer, computer system, computer network, computer software, computer program, computer database, World Wide Web site or telecommunication device or any part thereof with the intent to interrupt the normal functioning of a person or to devise or execute any scheme or artifice to defraud or deceive or control property or services by means of false or fraudulent pretenses, representations or promises.

18 Pa.C.S.A. § 7611(a)(1).

Criminal Use of a Communication Facility occurs when a person "uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony." 18 Pa.C.S.A. § 7512(a). "'Communication facility' means a public or private instrumentality used or useful in

13

the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone[s]..." § 7512(c). "The Commonwealth must prove beyond a reasonable doubt that: (1) Appellants knowingly and intentionally used a communication facility; (2) Appellants knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred." *Commonwealth v. Moss*, 852 A.2d 374, 382 (Pa. Super. 2004).

In this case, all charges stemmed from Normand's unlawful acquisition and unauthorized use of Ms. Bickford's personal credit card information. Ms. Bickford is a resident of North Carolina. She unequivocally testified that she never stayed or used her credit card in Pennsylvania, that she did not know Normand, that she did not give Normand or anyone else permission to access or use her credit card information, and that she neither made nor authorized anyone else to use her credit card to make the purchases that form the basis of the instant charges.

The evidence presented by the Commonwealth demonstrated that personal identifying information and access device numbers for credit cards belonging to others, including Ms. Bickford, were found in Normand's notebooks and cell phone. The evidence also showed that Normand used his cell phone, a computer, an Internet Protocol (IP) address, a Wi-Fi network, and the Internet to make a variety of purchases from several stores with Ms. Bickford's credit card information. In this regard, Normand ordered items including music recording equipment and barstools from Amazon.com and Lowes.com using Ms. Bickford's credit card. The IP address, phone number, and e-mail address used to purchase items from these websites

14

traced back and belonged to Normand. Additionally, on multiple occasions Normand used a phone to buy pizza from Pizza Hut with Ms. Bickford's credit card information. Further, as discussed, Normand was caught on tape at Lowe's picking up bar stools he ordered on the Internet with Ms. Bickford's credit card and a box corresponding to this transaction was found in his home. Finally, items Normand bought with Ms. Bickford's credit card as well as shipping labels corresponding with some of the purchases he made with the card were found in Normand's home. Even this brief summary of some of the relevant facts established by the Commonwealth is enough to demonstrate that the evidence was more than sufficient to sustain the jury's verdict.

In addition to challenging the sufficiency of the evidence, Normand contends that the verdict was against the weight of the evidence. A challenge to the weight of the evidence, in contrast to a challenge to the sufficiency of the evidence,

> concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

15

*Widmer*, 744 A.2d at 751-752 (internal citations, footnote, and quotation marks omitted). Accordingly, trial courts possess only narrow authority to reverse a jury verdict on a weight of the evidence challenge.

> The general rule in this Commonwealth is that a weight of the evidence claim is primarily addressed to the discretion of the judge who actually presided at trial. There is, of course, some tension between the power of trial courts to overturn jury verdicts premised upon weight claims, and the bedrock principle that questions of credibility are exclusively for the fact-finder. Accordingly, the authority for the trial judge to upset a verdict premised upon a weight claim is narrowly circumscribed. A trial judge cannot grant a new trial because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion. Instead, a new trial should be granted only in truly extraordinary circumstances, *i.e.*, when the jury's verdict is *so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.*

*Armbruster v. Horowitz*, 813 A.2d 698, 702-703 (Pa. 2002) (internal citations and quotation marks omitted; emphasis in original).

The appellate standard of review on a claim that the verdict or adjudication was against the weight of the evidence,

> is very narrow. The determination of whether to grant a new trial because the verdict is against the weight of the evidence rests within the discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record. A claim that the evidence

16

> presented at trial was contradictory and unable to support the verdict requires the grant of a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice.

*Com. v. Lyons*, 833 A.2d at 259 (quoting *Com. v. Griffin*, 453 Pa. Super. 657, 684 A.2d 589, 596 (1996) (internal citations omitted)).

Under these standards, Normand's weight of the evidence challenge admits the sufficiency of the evidence and, to be successful, must be based on extraordinary circumstances, such as when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Against the background of this case and when all facts are considered, it is clear that the verdict is not contrary to the weight of the evidence.

The evidence presented by the Commonwealth is discussed above. As noted, the evidence was unquestionably sufficient to support the verdict. To be sure, at trial, Normand disputed the evidence, denied committing the offenses, and attempted to persuade the jury that all of the illegal acts were not committed by him, but were instead perpetrated by a Tyrone Deloatch, a former member of the household. In furtherance of this defense, Normand called witnesses and testified himself proclaiming his innocence. A jury of his peers heard but rejected Normand's evidence and arguments. Doing so was squarely within the jury's province. Under the facts and circumstances of this case, the verdict does not shock the conscience and there is not even a hint that justice has been denied. Normand's weight claim simply does not hold water.

17

For these reasons, as well as those stated on the record during the hearing on Normand's post-sentence motion, we believe that the judgment of sentence should be affirmed.

BY THE COURT:

DATE: 9/29/14

_____
JONATHAN MARK,          J.

cc:     Superior Court of Pennsylvania
        Jonathan Mark, J.
        District Attorney
        Brian S. Gaglione, Esq.

2014 SEP 29 AM 10 43
MONROE COUNTY, PA
CLERK OF COURTS

18